Breitel, J.
Claimant, a motion picture distributor, seeks recovery of $128,322.50 in motion picture license fees paid to the State from June 10, 1959 to June 10, 1965 when the applicable statutes were nullified (Education Law, § 120-132; Matter of Trans-Lux Distr. Corp. v. Board of Regents, 16 N Y 2d 710, on remand from the United States Supreme Court, 380 U. S. 259). The fee for original films was $3.50 for each 1,000 feet of film while the fee for copies was $3 plus an additional dollar *418 for each 1,000 feet (Education Law, § 126). Although over a six-year period the fees aggregate an impressive sum, the fee per motion picture distributed in New York was only an inconsiderable expense compared to the cost of production, most often less than $10. Claimant had paid all but a trivial portion of the fees without protest and had not otherwise ever resisted the statutory procedure for licensing or the payment of fees.
On the prior appeal (14 N Y 2d 88) in the Trans-Lux case (380 U. S. 259, 16 N Y 2d 710, supra) this court, in upholding the denial of a motion picture license, passed only on the propriety of denying a license for the particular motion picture in suit. The validity of the licensing statute, extant in some form since 1927, its procedure, and the fees charged were not in issue. Motion picture licensing generally had been held valid by the Supreme Court, and indeed in Freedman v. Maryland (380 U. S. 51), the case upon which the Trans-Lux order was reversed, the Supreme Court went out of its way to observe that a requirement of prior submission of motion pictures to a licensing board need not be unconstitutional. The Freedman case nullified the Maryland statute only because its procedural “ apparatus ” violated due process in not providing for prompt judicial review. Since the New York procedure was similar to Maryland’s, this court on remand declared the New York statute null (16 N Y 2d 710, supra).
A majority at the Appellate Division sustained claimant’s right to recover all fees paid since 1959. While $128,322.50 plus interest is now involved, other cases pending bring the claims to just under $2,000,000.
As posed by the parties, the issue is whether the payments of the license fees were voluntary, or involuntary under duress entitling the payor to recover, albeit the payments were made without protest or other action to resist the payments or to recover them.
Two leading New York cases mark clearly when there is a right to recover unprotested taxes or fees.
In Mercury Mach. Importing Corp. v. City of New York (3 N Y 2d 418) this court, over vigorous dissent it is true, held that corporate taxpayers who voluntarily paid an illegally levied tax without protest were not entitled to refunds although the statute under which the taxes were paid was subsequently *419 held unconstitutional. The fulcrum of the determination was the relatively new section of the Civil Practice Act which provided that a mistake being one of law for that reason alone did not forbid recovery for mistake (§ 112-f). The taxpayers had made a mistake of law, namely, as to the validity of the taxing statute, but it was held that the mistake did not render the payment involuntary. It was pointed out that in a sense no tax is paid willingly, free from the coercion of law. The precedents were collated and classified and it is unnecessary to repeat what was done there.
In Five Boro Elec. Contrs. Assn. v. City of New York (12 N Y 2d 146) this court again in an opinion by Judge Van Voorhis, who had written for the court in the Mercury case (3 N Y 2d 418, supra), but this time with unanimous concurrence of the court, permitted the recovery of license fees paid under a city local law without protest by licensed electricians. The distinction was made that the payments then in question were involuntary and under duress, because the electricians would otherwise have been barred from engaging in their occupations. The court held that protest was not required “ under the circumstances of this case * * * in view of the compulsory nature of the payment of these exorbitant license fees ” (id., at p. 149). Most important, the fees themselves had been the subject of a previous successful attack and the exaction declared unconstitutional because the amounts bore no reasonable relation to the licensing and regulation of electricians under a nonrevenue statute (Adlerstein v. City of New York, 6 N Y 2d 740).* Again the same authorities cited in the Mercury case were reviewed and the distinctions there made repeated to explain the difference in result between the two cases.
The Mercury and Five Boro cases are not aberrational. They conform generally with distinctions made throughout the country between voluntary and involuntary payments of taxes or fees later declared void, and the necessity for protest in the case of voluntary payments (see, generally, Restatement, Restitution, § 75, including Comments and Illustrations; Ann., Taxes — Invol *420 untary Payment — Recovery, 80 ALR 2d 1040 ; 53 O. J. S., Licenses, § 57).
Applying the distinctions to this case, the payments by claimant were voluntary, and in the absence of protest at the time, claimant is not entitled to recover the fees it paid just because in a collateral matter on grounds not applicable to it or ever raised by it, the statute has been declared null.
The test of voluntariness in cases involving taxes and fees is sometimes elusive and difficult of application. As noted earlier by Judge Van Voorhis, all taxes and fees in a sense are paid “ involuntarily ”. The difference is often, if not always, one of degree and turns on many factors, including the right of taxing authorities to rely on objection if there be resistance to payment, the likelihood that authentic resistance will be asserted, the unavoidable drastic impact of the taxes or fees on the claimant, and the impact on the public fisc, if revenues raised long ago and expended are subject to reimbursement. Surely one would expect motion picture distributors, and especially a corporation as large as claimant with its staff of lawyers, to protest if' the fees were thought illegal. Indeed, the failure to protest indicates that there was no authentic resistance to making the minimal payments for the extensive procedures in licensing motion pictures whose gross yield would be massive compared to the trivial fees imposed.
Moreover, the fees as such have never been held illegal or excessive but on the contrary sustained, and the regulatory services which the fees financed have long ago been rendered and the cost undoubtedly passed on to the patrons of the films. The Trans-Lux case (14 N Y 2d 88, 380 U. S. 259, 16 N Y 2d 710, supra) and the Freedman case (380 U. S. 51, supra) each involved a license requirement to exhibit a motion picture, and the requirements were overturned becáuse of the invalid procedure under the statute. On the other hand, the fees sought to he recovered in this case were reasonable tariffs for motion picture licensing and the films were actually licensed (Matter of Connection Co. v. Regents, 17 A D 2d 671, affd. 12 NY 2d 779). Notably, in the Freedman case (380 U. S. 51, supra) the Supreme Cqurt reiterated its prior holdings that motion pictures were, properly subject to licensing and the payment of license fees. Indeed, Mr. Justice Brennan, on behalf of the court, suggested illus *421 trative procedural means to implement a valid licensing statute (380 U. S., at pp. 60-61). In a similar context, and in the only reported case found deciding the issue of the recovery of license fees paid without protest under a motion picture licensing statute, the Pennsylvania Supreme Court denied recovery for reasons analogous to those mentioned above (Universal Film Exch. v. Board of Finance & Revenue, 409 Pa. 180, cert. den. 372 U. S. 958). Of particular significance to the Pennsylvania court were the long years of acquiescence with adequate opportunity to take legal action, the rendering of inspection services as a quid pro quo, the benefit to the industry, and the passing on of the costs of the license fees to the theatre-going public. (See, also, Box Office Pictures v. Board of Finance & Revenue, 402 Pa. 511, 515-519; Paramount Film Distr. Corp. v. Tracy, 176 N. E. 2d 610, 618-621, affd. 118 Ohio App. 29, affd. 175 Ohio St. 55.)
What has been said so far assumes, as the parties have assumed, that restitution is appropriate unless it can be shown that claimant paid its license fees voluntarily. But, if general principles of restitution were to be reached, even if one assumes involuntary or coerced payment, those general principles do not support restitution.
The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered (Grombach Prods. v. Waring, 293 N. Y. 609, 615; American Sur. Co. v. Conner, 251 N. Y. 1, 8-11; Miller v. Schloss, 218 N. Y. 400, 407; Schank v. Schuchman, 212 N. Y. 352; Restatement, Restitution, § 1; 50 N. Y. Jur., Restitution, §§ 1, 3). Such a claim is undoubtedly equitable and depends upon broad considerations of equity and justice (50 N. Y. Jur., Restitution, § 7). Generally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant’s conduct was tortious or fraudulent (Restatement, Restitution, §§ 1,142, esp. Comment b; id., § 155, including Comment b).
It is difficult to say that the State has received any benefit, let alone unjust enrichment. The fees defrayed the cost of the *422 licensing program, a program which, at least, was intended to further the interests of both the industry and the public. The statute was not a revenue measure, and, inter alia, it exacted a regulatory fee to support the program. The difference between regulatory fees and revenue imposts, the latter including unauthorized excessive regulatory fées paid involuntarily, also, distinguishes this case, from the Five Boro case (12 N Y 2d 146, supra).
Moreover, the funds have been disbursed long ago. Nor has the State acted tortiously or fraudulently in exacting the fees. The implications of this court’s holding in Trans-Lux invalidating the statute for reasons distinct from the power to collect fees has already been noted. That the exactions were themselves proper and not tortious, fraudulent, or illegal, and that they have been consumed is significant. Generally, if a plaintiff’s recovery will lead to an undue net loss to a defendant by reason of a changed position, as will often be the case when the funds have been disbursed, then the parties being equally innocent, recovery may be denied (Ball v. Shepard, 202 N. Y. 247, 253-254; Matter of Harned, 149 Misc. 476, 478-479 [Wingate, S.]; 44 N. Y. Jur., Payment, §§ 105-106; see, generally, Ann., Restitution—Payee’s Change of Position, 40 ALR 2d 997).
In summary, the payment of license fees without protest was voluntary for purposes of recovery of moneys paid as fees or taxes; hence, no recovery for the fees collected without protest or other resistance may be allowed. Since a small percentage of fees were paid under protest between March and June, 1965, the matter should be remanded so that such fees may be computed, and recovery allowed.
Accordingly, the order of the Appellate Division should he reversed, with one bill of costs, and the action remanded for further proceedings in accordance with this opinion.

 Plaintiffs in the Five Boro ease were among those who brought the class action in the Adlerstein case to nullify the local law. The fees sought to be recovered in the Five Boro case were paid while the Adlerstein action was pending.