**BANK SADERAT IRAN, Plaintiff,**

v.

**AMIN BEYDOUN, INC. and Amin Beydoun, Defendants.**

No. 79 Civ. 6088 (MEL).

United States District Court,
S.D. New York.

Jan. 18, 1983.

Walter, Conston, Schurtman & .Gumpel, P.C., New York City, for plaintiff; David B. Wolf, New York City, of counsel.

Morris C. Kimmel, New York City, for defendants; Kim Steven Juhase, New York City, of counsel.

LASKER, District Judge.

Bank Saderat Iran ("BSI") is an Iranian corporation with branches in many cities,

including Beirut and New York. Amin Beydoun, Inc. ("Beydoun Inc.") is a New York corporation which, until it ceased operating in 1978, was engaged in the textile business, buying textiles in the United States and shipping them overseas. Amin Beydoun is the sole shareholder, officer and director of Amin Beydoun, Inc.[1]

During the period relevant to this action, Beydoun Inc. did regular business with Fouad Beydoun & Fils ("Beydoun & Fils") of Beirut, Lebanon, a textile concern run by Amin Beydoun's father, Fouad Beydoun. Beydoun Inc. sent textile samples to Beydoun & Fils with prices, and Beydoun & Fils ordered merchandise from Beydoun Inc. by telex, letter or telephone. Beydoun & Fils paid for the merchandise by sending money through correspondent banks to Beydoun Inc.'s account at First National City Bank in New York City. Beydoun & Fils' payments, which were sent at irregular intervals, were credited to Beydoun & Fils' account with Beydoun Inc. as they arrived.

On March 3, 1976, BSI, at the direction of Beydoun & Fils, made a payment of $24,950 to Beydoun Inc.'s account at First National City Bank. BSI made two more payments of $24,950 to Beydoun Inc.'s account on March 10, 1976. In this action BSI claims that one of the $24,950 payments made on March 10, 1976 was made by mistake, and that as a matter of law it is entitled to recover the mistaken payment. *See Manufacturers Trust Company v. Diamond,* 17 Misc.2d 909, 186 N.Y.S.2d 917 (App.Term 1st Dept.1959). BSI also bases its action upon a theory of unjust enrichment. *See Paramount Film Distributing Corp. v. State of New York,* 30 N.Y.2d 415, 334 N.Y.S.2d 388, 285 N.E.2d 695 (1972). The defendants dispute that the payment was made by mistake, and also claim that recovery is in any event barred because the defendants have changed their position to their detriment in reliance upon the payment. According to

defendants, Beydoun Inc. shipped materials to Beydoun & Fils in exchange for the allegedly mistaken $24,950 payment. It follows, they say, that since Beydoun & Fils has gone out of business and cannot make restitution to the defendants, plaintiffs should not be permitted to recover the allegedly mistaken payments from defendants. Amin Beydoun also asserts that no basis has been established for holding him individually liable for a mistaken payment made to the account of Beydoun Inc.

*The Evidence*

BSI presented bank records and other documentary evidence in support of its claim of a mistaken payment, along with the testimony of two witnesses: Heidar Hamedani, currently the managing agent of BSI's New York agency, who carried out the bank investigation leading to identification of the allegedly mistaken payment; and Theodore Atsalas, who was employed by BSI at the time during which the payment was made and who was responsible for carrying out the procedures which resulted in the claimed mistaken payment. Both BSI and the defendants called Amin Beydoun as a witness. The defendants called no other witnesses.

The documentary evidence, together with Hamedani's[2] and Atsalas' testimony, established the following sequence of events leading up to the three $24,950 payments in early March 1976. On March 1, 1976, in accordance with the instructions of Beydoun & Fils, BSI's Beirut branch telexed a payment order for $24,950 to BSI's New York agency (Pl.Ex. 1). The payment order was assigned the number BSI/637/26. Hamedani testified that it was BSI's practice to assign a separate number to each payment order. BSI's New York agency paid the requested amount, minus a $5.00 service charge, to Beydoun Inc.'s account at First National City Bank, by a check drawn on the New York agency's account at Conti-

---

**1.** The corporation has never been formally dissolved.

**2.** Hamedani had no personal knowledge of the events leading to the allegedly mistaken pay-

ment, but testified as someone familiar with the procedures followed by BSI in handling payment orders and qualified to explain the bank records presented by BSI.

nental Bank International, dated March 3, 1976 (Pl.Ex. 2). The New York agency's ledger shows that payment was made on March 4, 1976 (Pl.Ex. 15).

On March 9th, BSI's Beirut agency sent a telex to the New York agency regarding payment order number BSI/637/26, stating (in effect) that Beydoun & Fils had informed the Beirut agency that Beydoun Inc. had not yet received the $24,950 (Pl.Ex. 5). The telex requested immediate payment of the payment order and inquired about the reasons for the delay. The March 9th telex carries a notation, initialed by Atsalas, indicating that Atsalas had made an investigation on March 10th in response to the telex inquiry and had determined that payment order BSI/637/26 had not yet been paid. Atsalas testified that he would not have come to this conclusion if he had been aware of the New York ledger entry showing payment of order number BSI/637/26 (Pl.Ex. 15). Atsalas, who is no longer employed by BSI, was unable to explain why he had failed to discover the ledger entry.

On March 10th, after Atsalas had concluded that payment order BSI/637/26 had not been paid, the New York agency made a payment of $24,950 in federal funds to Beydoun Inc.'s account at First National City Bank, by debiting the New York agency's account at the Irving Trust Company in New York. Hamedani explained that transfers are made in federal funds when the bank wishes to complete a transfer on a same-day basis. The debit advice issued to the New York agency by the Irving Trust Company refers to payment order number BSI/637/26 and shows a debit of $24,950 (Pl.Ex. 7). The March 10th payment was recorded in the New York agency's ledger on March 11th (Pl.Ex. 15).[3]

At approximately the same time the New York agency was investigating whether payment order BSI/637/26 had been paid, BSI's Beirut branch, at Beydoun & Fils'

request, telexed a second payment order, numbered BSI/637/42, to BSI's New York agency, for payment to the account of Beydoun Inc. This payment, again of $24,950, was also made in federal funds by debiting the New York agency's account at Irving Trust (Pl.Ex. 8). This payment, like the second payment on payment order BSI/637/26, was entered on the New York agency's ledger on March 11th (Pl.Ex. 15). Hamedani testified that, upon completing an investigation of the documents summarized above, he concluded that two $24,950 payments were correctly made to Beydoun Inc.'s account between March 3rd and March 11th, pursuant to payment orders BSI/637/26 and BSI/637/42, and that a mistaken duplicate payment was made on payment order BSI/637/26. Hamedani stated that, when he called Amin Beydoun about the mistake in early August 1976, Beydoun was "friendly" and said that he would check his records and check with Fouad Beydoun, and would rectify the matter if any mistake had been made. A few days later, Beydoun said that he had checked with Fouad Beydoun but would be unable to clarify the matter further because Fouad's records had been destroyed during the Lebanese Civil War. Apparently, Hamedani and Beydoun did not discuss whether Beydoun's records alone revealed whether or not the payment was a mistake. According to Hamedani, Amin Beydoun reported that Fouad Beydoun had stated that he thought he had made three transfers to Amin Beydoun during the period in question. Shortly following this conversation, BSI commenced the instant lawsuit.

Amin Beydoun testified that, at the time of the contested payment, Beydoun & Fils accounted for about 25 to 35 percent of Beydoun Inc.'s business. Beydoun & Fils maintained a revolving account with Beydoun Inc.: that is, Beydoun Inc. shipped merchandise to Beydoun & Fils continuous-

---

3. The New York agency received a second telex inquiry dated March 10, 1976 stating that the beneficiary (Beydoun Inc.) had not been paid. Telexes sent by the New York agency to BSI's Beirut branch, dated March 11th and 12th, re-

sponded to the March 9th and 10th telex inquiries by stating that the New York agency had not received payment order number BSI/637/26 but had "acted on your cable of 3.9.1976." (Pl.Exs. 12 and 13).

ly, debiting Beydoun & Fils' account, and Beydoun & Fils made periodic payments which were credited to its account by Beydoun Inc. Beydoun Inc. did not require payment in advance nor a letter of credit before shipping material to Beydoun & Fils.[4] Indeed, Beydoun often was forced to make repeated requests for payments when Beydoun & Fils had accumulated a large debit balance.

Beydoun testified that he kept careful records of all shipments and payments relating to Beydoun Inc.'s business, and his ledgers in fact reflect three $24,950 payments in early March (Def.Ex. B). Nevertheless, according to Beydoun, because of the credit arrangement described above and the substantial volume of transactions between Beydoun & Fils and Beydoun Inc., it was and is impossible to trace any particular payment by Beydoun & Fils to any particular shipment of merchandise. Beydoun testified that he was expecting several payments from Beydoun & Fils in late February and early March,[5] and that it was his practice to contact the bank if he was expecting a payment from Beydoun & Fils and had not yet received it. Beydoun had no specific recollection of the inquiry that he made in connection with the payment at issue here.

Although Beydoun was unable to point to specific merchandise that was shipped to Beydoun & Fils as a result of the contested payment, Beydoun testified that because his accounts balanced when he wound down his corporation in 1978, he is certain that he shipped merchandise to Beydoun & Fils in return for whatever payments he received for their account.[6]

Beydoun testified that, throughout Beydoun Inc.'s operation, he kept Beydoun Inc.'s finances strictly separate from his own, and withdrew money from the corporation only for his salary and for repayment of loans that he made to the corporation from time to time. Beydoun did not borrow from Beydoun Inc. at any time.

*Discussion*

Under New York law, a party who has made a mistaken payment to another based upon a unilateral mistake of fact may recover the payment unless the payee has changed his position to his detriment in reliance upon the mistaken payment. *Manufacturers Trust Company v. Diamond,* 17 Misc.2d 909, 186 N.Y.S.2d 917 (App.Term 1st Dept.1959). BSI has carried its burden of demonstrating that a mistaken payment was made. The evidence is clear that two payments were made on payment order number BSI/637/26, and that a double payment on one payment order would not have been made but by mistake. Beydoun argues that, had the records of Beydoun & Fils not been destroyed, he might have been able to establish that Beydoun & Fils actually authorized three payments of $24,950 in early March 1976, and that BSI should not be able to recover for its own alleged mistake when the passage of time has made it impossible for him to respond to their allegations with proof that the payment was not mistaken. This argument is unpersuasive. The bank records presented by BSI, and the testimony of its former employee that he would not have authorized a second payment of the payment order had he been aware that it had already been paid, establishes credibly that a mistake was made. Beydoun's speculation that the records of

---

4. Several telexes introduced into evidence reflected demands by Amin Beydoun for payment in advance or a letter of credit (*e.g.* Pl.Ex. 29), but according to Beydoun the fact that he made such requests "doesn't mean that it happened"—*i.e.,* that he received payment or a letter of credit before shipments were made. Other telexes introduced into evidence merely reflect instructions from Beydoun to Beydoun & Fils to require a letter of credit from other customers before shipping them merchandise (*e.g.,* Pl.Ex. 39). In any event, advance payment was not part of the normal course of

business between Beydoun & Fils and Beydoun Inc.

5. Beydoun testified, and his records show, that Beydoun Inc. received $165,000 between February and April of 1976.

6. According to Beydoun, when Beydoun closed his corporation's account with Beydoun & Fils, Beydoun & Fils had a credit balance of about $5,000, which Beydoun Inc. paid to Beydoun & Fils by check.

Beydoun & Fils might have shown the payment to be correct does not provide a basis for rejecting the clear evidence presented on this issue by BSI.

■ Beydoun *has* convincingly demonstrated, however, that he has detrimentally changed his position in reliance upon the mistaken payment, and that recovery by BSI is therefore barred. Beydoun's testimony concerning his business arrangements with Beydoun & Fils was entirely credible, and warrants the conclusion that Beydoun Inc. shipped merchandise to Beydoun & Fils in return for the $24,950 payment. If Beydoun & Fils had not gone out of business between the time of the mistaken payment and the time this action was instituted, Beydoun Inc. could have taken action against Beydoun & Fils following adjudication of Beydoun Inc.'s liability to BSI. Because recovery as against Beydoun & Fils is no longer possible, "it would be unjust to require [defendants] to refund." *Manufacturers Trust Company, supra*, 186 N.Y.S.2d at 919, quoting *National Bank of Commerce of New York v. National Mechanics' Banking Ass'n of New York*, 55 N.Y. 211, 213 (1873). The fact that recovery against the party liable to Beydoun Inc. is unavailable distinguishes this case from cases in which it has been held that, because the defendant has simply spent the money and presumably has the value of whatever he obtained by the expenditure, no detrimental change in position can be established. *E.g., First National Bank v. McManus*, 29 N.C.App. 65, 223 S.E.2d 554, 558–59 (1976); *see* Restatement of the Law of Restitution § 142, comment b, at 569–70 (1937).

■ Moreover, as to the issue whether BSI is entitled to recovery against Amin Beydoun in his personal capacity, it is clear that the evidence does not warrant a finding that New York's strict standards for piercing the corporate veil have been met. Under New York law, the corporate veil may not be pierced absent a showing of fraud or disregard of the corporate form— *e.g.*, through the intermingling of corporate and personal funds. *Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223

N.E.2d 6 (1966). BSI has made no such showing here, and thus is not entitled to recover directly from Beydoun on its cause of action based upon mistaken payment.

■ BSI also contends, however, that it is entitled to recovery of the payment under a theory of unjust enrichment, and that under this theory recovery directly against Beydoun is available. Under New York law, "the essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distributing Corp. v. State of New York*, 30 N.Y.2d 415, 334 N.Y.S.2d 388, 393, 285 N.E.2d 695 (1972). *See also Indyk v. Habib Bank Limited*, 694 F.2d 54 (2d Cir.1982). The evidence in this case does not support a finding that equity demands payment by Amin Beydoun of the money mistakenly paid to Beydoun Inc. The payment, though mistaken, was not obtained through any fraudulent conduct on the part of Amin Beydoun. Moreover, as noted previously, Beydoun Inc. and Amin Beydoun have changed their positions to their detriment in reliance upon the payment, and are neither in possession of the money, nor able to recover it from the party who ultimately received the benefit of the mistake. Accordingly, "broad considerations of equity and justice" do not mandate that either Beydoun Inc. or Amin Beydoun is liable for the payment. *Paramount Film Distributing Corp., supra*, 334 N.Y.S.2d at 393, 285 N.E.2d at 698.

In sum, we find and conclude that although a mistaken payment was made by BSI to Beydoun Inc., BSI is not entitled, in the circumstances of the case, to recover from either Beydoun Inc. or Amin Beydoun. Accordingly, the complaint is dismissed.

It is so ordered.