**W.H. SMITH PUBLISHERS, INC., Plaintiff,**

v.

**PLEXUS PUBLISHING LIMITED, Defendant.**

**No. 82 Civ. 3424.**

United States District Court, S.D. New York.

Feb. 25, 1983.

Parker, Duryee, Zunino, Malone & Carter, New York City, for plaintiff; William Lee Kinnally, Jr., New York City, of counsel.

Ressa, Nappi & Weinig, Port Washington, for defendant; Harvey Weinig, Stephen A. Ressa, Port Washington, N.Y., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

These are cross-motions for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. The parties agree that there are no issues of fact and that the sole issue is one of law.

The defendant, Plexus Publishing Limited ("Plexus"), a British publishing company, was engaged in the preparation of a book entitled *ROCK 'N' ROLL BABYLON* ("the book") to portray the lives of rock and roll celebrities. Plaintiff, W.H. Smith Publishers, Inc. ("Smith"), a Delaware corporation, was interested in purchasing 25,000 copies of an American edition of the book.[1] After extensive negotiations, the parties entered into a written agreement on July 23, 1981, at which time plaintiff made a down payment of $25,875. Prior to the execution of the contract, a dummy manuscript of the edition had been examined and approved by Smith.

The parties evidently recognized that the final manuscript in its reference to the rock and roll stars might contain matter that presented the prospect of libel actions. Thus, the contract contained a provision that upon delivery of the complete text of the manuscript and illustrations, plaintiff had the right, within a thirty-day period, to review the text and illustrations and if, based upon the opinion of its counsel, the work contained matter that was libelous or might infringe upon the copyrights of other persons, the defendant "shall either make or cause to be made such changes or deletions as may be necessary, in the opinion of such counsel, to make the work fit and acceptable for publication, or else the Publisher [Smith] shall have the absolute right to terminate this Agreement and recover" from Plexus the amounts paid thereunder.

Soon after the contract was signed, Smith received from the defendant the completed manuscript of the book. Thereupon, on August 4, 1981, plaintiff informed the defendant that upon its lawyer's advice that the submitted manuscript contained libelous matter, it was unacceptable, and accordingly Smith was exercising its right to terminate the agreement and demanded the return of the down payment of $25,875. The defendant disputed plaintiff's right to cancel without affording it the opportunity to correct the claimed objectionable passages.

There can be no question that plaintiff breached the agreement by its unilateral cancellation. The agreement required plaintiff to afford the defendant a reasona-

---

1. The parties are in accord that New York law is applicable under their agreement.

ble opportunity to revise the manuscript. This it failed to do. Instead, plaintiff merely notified the defendant that because of its lawyer's advice it rejected the manuscript. More was required before it could cancel— an opportunity to defendant to revise the manuscript and only if defendant failed to make the changes necessary to satisfy plaintiff's counsel, did plaintiff have the right to cancel. Indeed, plaintiff does not dispute the breach. What is in dispute is the amount of damages for which plaintiff is liable.

The plaintiff contends that the contract is for the sale of goods and is governed by Article 2 of the New York Uniform Commercial Code and that pursuant to section 2–718 it is entitled to restitution of the down payment of $25,875, less $500.[2] If the Uniform Commercial Code does not apply, plaintiff by its breach forfeits the down payment.[3] The defendant contends that the contract essentially is one for work, labor and services and that it is entitled to retain the down payment, as well as to recover losses sustained by it as a result of plaintiff's breach. In determining whether or not a contract is one for the sale of goods or for work, labor and services, the Court must look to the essence of the agreement.

When service predominates, the incidental sale of items of personal property does not alter the basic transaction.[4]

The Court is satisfied that the parties' agreement was essentially for work, labor and services. The sale of goods contemplates a commercial product that is ready for immediate public distribution or goods that can readily be assembled for such distribution. Here, when the parties entered into the agreement, the final product was not ready for such distribution. Much remained to be done that required the services and skill of the defendant. There was final rewriting and editing, the design of the book, art work, picture research, picture selection, and finally the actual printing of the books.

Even when a publisher provides a manuscript to a printer, who then prints, binds and completes the book, the contract has been held to be one for work, labor and services rather than one for the sale of goods.[5] A more analogous case than the book printing cases is *For Children, Inc. v. Graphics International, Inc.*,[6] decided by this Court. There the plaintiff, a marketer of children's books, placed an order with the defendant for the production and printing

---

2. N.Y.U.C.C. § 2–718 provides in pertinent part:
. . . .
(2) Where the seller justifiably withholds delivery of goods because of the buyer's breach, the buyer is entitled to restitution of any amount by which the sum of his payments exceeds
. . . .
(b) . . . twenty per cent of the value of the total performance for which the buyer is obligated under the contract or $500, whichever is smaller.
(3) The buyer's right to restitution under subsection (2) is subject to offset to the extent that the seller establishes
(a) a right to recover damages under the provisions of this Article other than subsection (1), and
(b) the amount or value of any benefits received by the buyer directly or indirectly by reason of the contract.
Plaintiff contends that it is entitled to $25,375 under the above provision (its down payment less $500) because, plaintiff alleges, defendant has not suffered any damages since it resold the book to another publisher, G.P.

Putnam and Sons, and plaintiff did not receive any benefits by reason of the contract.

3. *See Procter & Gamble Distributing Co. v. Lawrence American Field Warehousing Corp.*, 16 N.Y.2d 344, 266 N.Y.S.2d 785, 793, 213 N.E.2d 873 (Ct.App.1965); *Lichtman v. I.P.M. Industries*, 158 N.Y.S.2d 813, 814 (App.Div. 1956); *Waldman v. Greenberg*, 265 App.Div. 827, 37 N.Y.S.2d 565, 566 (App.Div.1942), aff'd, 289 N.Y. 769, 46 N.E.2d 364 (Ct.App.1943). *See also Harcourt Brace Jovanovich, Inc. v. Goldwater*, 532 F.Supp. 619 (S.D.N.Y.1982).

4. *See North American Leisure Corp. v. A & B Duplicators, Ltd.*, 468 F.2d 695, 697 (2d Cir. 1972); *Perlmutter v. Beth David Hospital*, 308 N.Y. 100, 123 N.E.2d 792 (Ct.App.1954); *Schenectady Steel Co. v. Bueno Trimpoli*, 43 A.D.2d 234, 350 N.Y.S.2d 920, 922–23 (App.Div.1974).

5. *See, e.g., Wm. H. Wise & Co. v. Rand McNally*, 195 F.Supp. 621 (S.D.N.Y.1961) and cases cited therein.

6. 352 F.Supp. 1280 (S.D.N.Y.1972).

of children's books which included art work, "pop up"[7] design and display boxes. This Court held:

> [E]ssentially, the contract was for the work, labor and services of the defendant, principally printing the pop-up books and supplying the materials . . . so that the books would be ready for marketing.[8]

Here, too, the contract was essentially for the work, labor and services of preparing a book from start to finish, from commissioning an author to write it until it was ready for sale as a finished product. While it is true that when the book was completed and the 25,000 copies to be delivered to the defendant there was a sale aspect to the transaction, the predominant and essential feature of the parties' contract was the services performed by the defendant. The case would be different if the defendant had completed the book at the time it entered into the contract and plaintiff purchased 25,000 copies of the completed book. This was not the case.

Since the defendant has stated that in the event the Court holds it is entitled to retain the down payment it will accept the same in full satisfaction of its counterclaim for consequential damages by reason of plaintiff's breach of the contract, the plaintiff's motion for discovery as to the damages under the counterclaim and the defendant's cross-motion for a protective order, now sub judice, are rendered moot.

The plaintiff's claim for unjust enrichment is also dismissed, since at the time it breached the agreement it specifically informed the defendant that it was "immediately free to negotiate any deal with another publisher in the U.S. for this property." Entirely apart from this consent, there is no basis to support a claim that a benefit was conferred upon the defendant under a mistake of fact or law so that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.[9]

Defendant's motion for summary judgment is granted; plaintiff's motion for summary judgment is denied.

So ordered.

---

7. "As the cover of the book is opened, an item pops up which is related to the theme of the book." 352 F.Supp. at 1281 n. 2.

8. 352 F.Supp. at 1283.

9. *See Paramount Film Distributing Corp. v. New York,* 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 393, 285 N.E.2d 695, 702 (Ct.App.1972); *Grombach Products v. Waring,* 293 N.Y. 609, 615, 59 N.E.2d 425, 428 (Ct.App.1944); *American Surety Co. v. Conner,* 251 N.Y. 1, 8–11, 166 N.E. 783, 785–87 (Ct.App.1929) (Cardozo, J.).