| |
|---|
| **Kahan v 960 Franklin LLC** |
| 2024 NY Slip Op 30615(U) |
| February 27, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 536153/2022 |
| Judge: Leon Ruchelsman |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CIVIL TERM: COMMERCIAL 8
----------------------------------------------x
HAIM KAHAN,

                      Plaintiff,        Decision and order

        - against -           Index No. 536153/2022

960 FRANKLIN LLC and DARYL HAGLER,      February 27, 2024
                      Defendants,
----------------------------------------------x
PRESENT: HON. LEON RUCHELSMAN        Motion Seq. #6

The defendants have moved pursuant to CPLR §3212 seeking summary judgement dismissing the two remaining causes of action of the amended complaint. The plaintiff opposes the motion. Papers were submitted by the parties and after reviewing all the arguments, this court now makes the following determination.

According to the amended complaint in 2022 non-party Chesky Weisz approached the plaintiff to invest in a real estate deal. Kahan agreed and wired ten percent of the purchase price, namely $4,500,000 on August 9, 2022. Sometime thereafter the plaintiff asserts that Weisz's representations were false and informed the defendants and Weisz that he would agree to use the funds to close on the property with the actual seller. The closing occurred on November 2, 2022 wherein 960 Franklin LLC purchased the property for $42,750,000.

On August 10, 2022, prior to the closing, defendant Hagler, the sole owner of defendant 960 Franklin LLC entered into an assignment agreement with Weisz whereby 960 Franklin Owner LLC, an entity owned by Weisz [hereinafter the 'Weisz entity'] would

become the sole owner of 960 Franklin LLC for a purchase price of $53,500,000. The assignment was designed to take place in two stages. First, the Weisz entity would provide a down payment of $4,500,000 and acquire a 51% interest in 960 Franklin LLC and the balance of $49,000,000 would be paid at the closing and the Weisz entity would then acquire the remaining 49% interest in 960 Franklin LLC.

On November 2, 2022, the day of the closing, the Weisz entity filed for bankruptcy. The petition listed the 51% ownership interest in 960 Franklin LLC as an asset and based upon the assignment agreement the petition listed Hagler as the largest creditor with an unsecured claim in the amount of $49,000,000. Although the defendants initially opposed the bankruptcy petition, on March 14, 2023 the Weisz entity filed a plan of reorganization which defendant Hagler joined. The reorganization plan was approved whereby this action and the plaintiff's claims survived such reorganization.

The plaintiff instituted this lawsuit and two causes of action for unjust enrichment and conversion remain. The basis for those causes of action is the assertion that the plaintiff forwarded significant sums of money which have not been accounted to the plaintiff in any way. The defendants have now moved seeking summary judgement dismissing those claims on the grounds they fail to allege any valid claims.

2

[*2]

## Conclusions of Law

Where the material facts at issue in a case are in dispute summary judgment cannot be granted (Zuckerman v. City of New York, 49 NYS2d 557, 427 NYS2d 595 [1980]). Generally, it is for the jury, the trier of fact to determine the legal cause of any injury, however, where only one conclusion may be drawn from the facts then the question of legal cause may be decided by the trial court as a matter of law (Marino v. Jamison, 189 AD3d 1021, 136 NYS3d 324 [2d Dept., 2021).

The elements of a cause of action to recover for unjust enrichment are that "(1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (see, GFRE, Inc., v. U.S. Bank, N.A., 130 AD3d 569, 13 NYS3d 452 [2d Dept., 2015]). Thus, "the essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (see, Paramount Film Distributing Corp., 30 NY2d 415, 344 NYS2d 388 [1972]).

It is well settled that to establish a claim for conversion the party must show the legal right to an identifiable item or items and that the other party has exercised unauthorized control and ownership over the items (Fiorenti v. Central Emergency Physicians, PLLC, 305 AD2d 453, 762 NYS2d 402 [2d Dept., 2003]).

3

[* 3]

As the Court of Appeals explained "a conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession...Two key elements of conversion are (1) plaintiff's possessory right or interest in the property...and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights" (see, Colavito v. New York Organ Donor Network Inc., 8 NY3d 43, 827 NYS2d 96 [2006]). Therefore, where a defendant "interfered with plaintiff's right to possess the property" (Hillcrest Homes, LLC v. Albion Mobile Homes, Inc., 117 AD3d 1434, 984 NYS2d 755 [4th Dept., 2014]) a conversion has occurred.

In a decision and order dated May 18, 2023 the court denied defendant's motion to dismiss these two causes of action. Despite the fact no discovery has since taken place this motion seeking summary judgement has been filed "to demonstrate that the two remaining causes of action for unjust enrichment and conversion...have absolutely no merit" (see, Memorandum of Law in Support, Preliminary Statement [NYSCEF Doc. No. 144]). To the extent this motion really seeks to reargue the earlier determination the court will conduct a fresh analysis.

An affidavit provided by Hagler illuminates the transactions relevant to this action. According to Hagler on

4

[*4]

July 19, 2022 Hagler, through his entity 960 Franklin LLC, entered into contracts to purchase two parcels, for $42,350,000 and $400,000 respectively and was required to pay two non-refundable deposits of $4,235,000 and $40,000 respectively. Of course, the plaintiff's funds were not utilized for these deposits since the plaintiff did not yet wire any funds. Hagler then assigned his interests to the Weisz entity and negotiated an extension of the closing date on behalf of the Weisz entity in exchange for additional down payments. Hagler states that "the additional deposits were funded by a down payment payable under my contract with the Weisz Entity" (see, Affirmation of Daryl Hagler, ¶8 [NHYSCEF 116]). Thus, on August 10, 2022 Hagler entered into agreements with Weisz wherein Hagler assigned 51% percent of his membership interests in 960 Franklin LLC to Weisz. Later that day, pursuant to the agreements, the down payments required were wired to the escrow agent. Indeed, a wire transfer was sent by the plaintiff to the escrowee agent on August 9, 2022 (see, NYSCEF Doc. No. 24]). There can be no dispute that the plaintiff's funds provided the down payment necessary for the assignment agreement to become effective transferring 51% of the interests of 960 Franklin LLC to the Weisz entity. However, the Weisz entity failed to effectuate the closing on November 2, 2022. At that juncture Hagler, through 960 Franklin LLC closed on the properties in efforts "to prevent the loss of the

5

[* 5]

Deposits" (see, Affirmation of Daryl Hagler, ¶44 [NYSCEF Doc. No. 116]). Hagler explains that upon the default of the Weisz entity, Weisz "automatically forfeited any interest in 960 Franklin, I was entitled to retain the Down Payment as liquidated damages, and I was expressly permitted to close title under the Underlying Sales Contracts and purchase the Property from the Underlying Sellers (through 960 Franklin)" (see, Affirmation of Daryl Hagler, ¶43 [NYSCEF Doc. No. 116]). Thus, Hagler utilized Kahan's funds to salvage the deposits made including Hagler's own deposit. To be sure, had the Weisz entity closed upon the properties then Kahan would only have claims against Weisz. The failure of Weisz to close forced Hagler to so close using Kahan's money. Thus, Kahan surely has claims for unjust enrichment against Hagler.

Hagler asserts that the plaintiff has no claims against him because "the Weisz Entity is not a party to the Underlying Sales Contracts and contracted to purchase all of my Membership Interests in 960 Franklin for a purchase price in the aggregate sum of $53,500,000" (see, Affirmation of Daryl Hagler, ¶29 [NYSCEF Doc. No. 116]). In other words, the plaintiff cannot assert any claims against Hagler because the plaintiff's only interactions in all these transactions were with Weisz and not Hagler at all. While that is surely true, as noted, Hagler utilized the plaintiff's funds to close upon the properties.

6

Hagler further argues that the down payment made by Kahan was entitled to be retained by Hagler as "liquidated damages" pursuant the assignment agreement with the Weisz entity. While that is true and of course Hagler did not need to know of or particularly care about, Kahan's investment, Kahan did invest those funds and by the closing date Hagler was aware of that investment. Thus, Hagler has not adequately demonstrated why no unjust enrichment claim accrues to Kahan thereby. Hagler seeks to shift the blame to either Kahan himself for failing to engage in due diligence or to Weisz for allegedly committing fraud upon Kahan. Even if both those assertions are true that does not change the simple reality that Kahan invested funds which were used by Hagler to save his down payment and allow the closing to occur.

This entire motion is rooted in one question, namely whether Hagler's right to retain the down payment upon Weisz's default necessarily allows Hagler to keep Kahan's investment. Hagler insists that "there was no relationship between" Kahan and Hagler, that they "had no dealings with each other" and that "960 Franklin did not do anything to induce Kahan to make the Down Payment" (see, Memorandum of Law in Support, pages 14, 15 [NYSCEF Doc. No. 144]). However, to assert an unjust enrichment claim privity between the parties is not required as long as the relationship is not too attenuated (Mandarim Trading Ltd., v.

7

[*7]

Wildenstein, 16 NY3d 173, 919 NYS2d 465 [2011]). That means "the parties must have something akin to specific knowledge of one another's existence" (Bashian & Farber LLP v. Syms, 173 AD3d 659, 102 NYS3d 255 [2d Dept., 2019]). Although Hagler claims he was not aware of the Kahan wire transfer of funds in August 2022 when they were first transferred (see, Affirmation of Daryl Hagler, ¶33 [NYSCEF Doc. No. 116]), he certainly became aware of Kahan's deposit shortly before the closing when Kahan complained of Weisz's misrepresentations. Indeed, on October 28, 2022 Kahan informed Hagler that he had deposited $4,500,000 with the escrowee and sought to preserve his rights to purchase the property (see, Letter, dated October 28, 2022 [NYSCEF Doc. No. 22]). Thus, prior to the closing Hagler was fully aware that Kahan had invested half the total deposit. Therefore, Hagler utilized Kahan's funds to save his own deposit when Weisz failed to close. It is true that Hagler may not have wanted to close and may have claims against Weisz in this regard, however, it is unavoidably true that Hagler used Kahan's funds to enable him to close and avert losing his own deposit. Whether Hagler's right to retain the down-payment as liquidated damages permits Hagler to keep Kahan's funds is surely a question about unjust enrichment that cannot be decided without any discovery in a summary fashion. Likewise, Hagler was fully aware the funds belonged to Kahan. Whether he believed he had the right to use

8

[*8]

them or he was manipulated into using them to secure his own four million dollar down payment certainly raises questions whether any conversion took place.

Lastly, the bankruptcy confirmation plan accepted by Hagler does not demand a dismissal of these claims. Pursuant to the reorganization plan of the Weisz bankruptcy, Hagler chose to regain all the membership interests of 960 Franklin LLC and the plan administrator assigned Hagler 51% of the membership interest of 960 Franklin LLC, previously assigned to Weisz, on May 22, 2023. Thus, Hagler insists that 960 Franklin LLC still owns the property. That reality further supports Kahan's claims since, as noted, Hagler purchased the property utilizing Kahan's money.

Therefore, the motion seeking summary judgement dismissing the conversion and unjust enrichment causes of action is denied.

Considering this motion was really a motion to reargue the parties, including the defendants may file a motion for summary judgement at the conclusion of all discovery.

So ordered.

ENTER:

DATED: February 27, 2024
Brooklyn N.Y.

Hon. Leon Ruchelsman
JSC

[* 9]