24-897-cv
*Residential Fences Corp. v. Rhino Blades, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of February, two thousand twenty five.

PRESENT:   AMALYA L. KEARSE,
               DENNY CHIN,
               STEVEN J. MENASHI,
                   *Circuit Judges.*

_____

Residential Fences Corp., Laser Industries, Inc.,

      *Plaintiffs-Appellees*,

   v.                                                    No. 24-897-cv

Rhino Blades, Inc., Tomer Yuzary, Angela Yuzary,

      *Defendants-Appellants*.

_____

| *For Plaintiffs-Appellees*: | CHERYL F. KORMAN, Rivkin Radler LLP, Uniondale, NY. |
|---|---|
| *For Defendants-Appellants*: | MICHAEL A. OROZCO, Price, Meese, Shulman & D'Arminio, P.C., Woodcliff Lake, NJ. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Locke, M.J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants Rhino Blades, Inc. ("Rhino Blades"), Tomer Yuzary ("Yuzary"), and Angela Yuzary ("Angela") (collectively, "defendants") appeal from a judgment entered by the United States District Court for the Eastern District of New York. Following a bench trial, the district court awarded Plaintiffs-Appellees Residential Fences Corp. and Laser Industries, Inc. (collectively, "RFC/Laser" or "plaintiffs") $3,319,929.50 plus post-judgment interest based on the determination that the defendants were unjustly enriched through their dealings with RFC/Laser. The district court found that Rhino Blades, a blade broker, exploited its access to RFC/Laser's company credit card and systematically overcharged RFC/Laser for construction blades from 2007 to 2013. Rhino Blades received payments far exceeding market rates—or charged for blades never delivered—despite no change in RFC/Laser's blade supply needs. The district court held Rhino Blades and its owner-operators, Yuzary and Angela, jointly and severally liable for the full amount of damages.

On appeal, the defendants challenge the judgment on three grounds. First, the defendants argue that certain evidence was erroneously admitted at trial and that the properly admitted evidence did not support the district court's conclusion

2

that Rhino Blades was unjustly enriched at RFC/Laser's expense. Second, the defendants argue that the district court's method of calculating damages was inherently unreliable and not supported by the record. Third, the defendants argue that the district court erred by holding Yuzary and Angela personally liable for the unjust enrichment of Rhino Blades. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I

"After a bench trial, this Court reviews a district court's factual findings for clear error and its legal conclusions de novo." *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009). "The 'clearly erroneous' standard applies whether the findings are based on witness testimony, or on documentary evidence, or on inferences from other facts." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). In determining whether the district court's factual findings are clearly erroneous, we must "give due regard to the trial court's opportunity to judge the witnesses' credibility." *Id.* (quoting Fed. R. Civ. P. 52(a)(6)). "It is within the province of the district court as the trier of fact to decide whose testimony should be credited," and the district court is "entitled, just as a jury would be, to believe some parts and disbelieve other parts of the testimony of any given witness." *Id.* (citations omitted). We may not "second-guess the court's credibility assessments." *Id.*

## II

The defendants argue that the evidence does not support the district court's conclusion that Rhino Blades was unjustly enriched through its business dealings with RFC/Laser. We disagree.

"Under New York law, a plaintiff asserting a claim of unjust enrichment must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant." *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176-77 (2d Cir. 2012) (quoting *Giordano*, 564 F.3d at 170). "[U]njust enrichment is not a catchall cause of action to

3

be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Rather, it is available when, "though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* "The essential inquiry in any action for unjust enrichment is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (alteration omitted) (quoting *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972)).

The district court's determination that Rhino Blades was unjustly enriched at RFC/Laser's expense is supported by the trial record. The evidence shows that from 2007 to 2013, after Rhino Blades obtained RFC/Laser's credit card information, Rhino Blades's charges to RFC/Laser increased dramatically without any corresponding change in RFC/Laser's blade supply needs. For example, RFC/Laser's annual blade payments to Rhino Blades rose from $73,415 in the last pre-credit-card year to a peak of $528,329 between 2010 and 2011. In the six years after terminating its relationship with Rhino Blades in 2013, RFC/Laser's annual blade expenses dropped to a maximum of $63,000 for products of comparable quality. Throughout this period, RFC/Laser maintained consistent staffing levels, and the company's project volume and blade requirements remained stable.

Yuzary testified that Rhino Blades charged RFC/Laser between $700 and $1,000 per fourteen-inch blade—which was the most common type of blade it sold to RFC/Laser—due to "market fluctuations." App'x 177. But invoices in evidence show that Rhino Blades charged other customers between $17 and $179 for the same product during this period. When questioned about these price differentials, Yuzary testified that the higher prices reflected RFC/Laser's larger business volume, but the district court determined that "this assertion was directly and credibly contradicted" by the plaintiffs' witness who "denie[d] ever speaking with Yuzary about future business and stated that to his knowledge Plaintiffs' business never increased substantially." *Residential Fences Corp. v. Rhino Blades Inc.*, No. 14-CV-2552, 2024 WL 964681, at *4, *7 (E.D.N.Y. Mar. 6, 2024). The district court also

4

observed that "there was no other evidence supporting Defendants' testimony," and it concluded that "[t]he only logical explanation is that Plaintiffs were overcharged for the blades they received." *Id.* at *7.

We see no reason to disturb the district court's findings. *See Cifra v. G.E. Co.*, 252 F.3d 205, 213 (2d Cir. 2001) ("The decisions as to whose testimony to credit and which of permissible inferences to draw are solely within the province of the trier of fact, and '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'") (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). The district court properly concluded that Rhino Blades received payments from RFC/Laser far exceeding the value of the blades provided and that principles of equity and good conscience require Rhino Blades to return the amounts it overcharged RFC/Laser.

### III

The defendants also challenge the district court's award of damages. They argue that the district court's methodology was speculative and not supported by the record. We disagree.

With respect to an award of damages entered after a bench trial, we review the district court's method of calculation of damages *de novo* and the actual calculation of damages for clear error. *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003); *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 97 (2d Cir. 1999). The measure of damages for a claim of unjust enrichment is "limited to the reasonable value of the services rendered by the plaintiff." *Giordano*, 564 F.3d at 170 (quoting *Collins Tuttle & Co. v. Leucadia, Inc.*, 153 A.D.2d 526, 526 (1st Dep't 1989)). "Enrichment from a money payment is measured by the amount of the payment or the resulting increase in the defendant's net assets, whichever is less." Restatement (Third) of Restitution and Unjust Enrichment § 49 (2011).

In calculating damages, the district court examined RFC/Laser's blade expenditures across three distinct periods: (1) before Rhino Blades obtained RFC/Laser's credit card information (October 2004 to September 2007); (2) during

the overcharging period (October 2007 to September 2013); and (3) after RFC/Laser terminated Rhino Blades (2014 to 2019). RFC/Laser's average annual blade expenditure during the first and third periods was $58,359.75. Deducting this baseline figure from the actual amounts RFC/Laser paid Rhino Blades each year from October 2007 to September 2013 resulted in a total overcharge of $1,755,350.50. The plaintiffs, however, had proposed a more conservative calculation based on the assumption that they could have paid up to $100,000 per year for blades. Accepting this $100,000 annual figure as the baseline instead of $58,359.75, the district court determined that RFC/Laser was overcharged by $1,501,110.68. This method yielded a lower damages figure than the district court's own estimation, but the district court decided to "hold[] Plaintiffs to their argument" and awarded damages of $1,501,110.68 plus pre- and post-judgment interest. *Residential Fences Corp.*, 2024 WL 964681, at *8.

The defendants' contention that this calculation was speculative is belied by the record. The district court relied on record evidence in the form of RFC/Laser's credit card statements and payment history. The defendants failed to maintain and to introduce business records, so they cannot complain that the damages calculation required estimation based on the available evidence. The defendants produced no invoices, no supplier records, and no documentation supporting the numbers of blades sent to RFC/Laser or the amounts charged per blade. A defendant cannot insulate itself from liability by refusing to produce documentation and then complaining about "speculation" when the district court must estimate damages in light of the available evidence. To the contrary, "[i]f the plaintiff's inability to prove an exact amount of damages arises from actions of the defendant, a factfinder has some latitude to make a just and reasonable estimate of damages based on relevant data." *Raishevich v. Foster*, 247 F.3d 337, 343 (2d Cir. 2001) (internal quotation marks omitted). In any event, the damages award represents a reasonable—and conservative—measure of Rhino Blades's unjust enrichment.

6

# IV

The defendants argue that the district court erred by holding Yuzary and Angela personally liable for the unjust enrichment of Rhino Blades. We again disagree.

Under New York law, holding a corporate officer or owner personally liable for a wrong the corporation committed requires piercing the corporate veil. *See Levin v. Kitsis*, 82 A.D.3d 1051, 1053 (2d Dep't 2011).[1] To do so, the plaintiff "must show that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 47 (2018) (quoting *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 18 (2015)). "While complete domination of the corporation is the key to piercing the corporate veil … such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required." *Morris v. New York State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 141-42 (1993).

An unjust enrichment claim may also succeed against the owner of a corporation in his individual capacity "if the plaintiff establishes that the owner received a benefit distinct from that received by the corporate entity." *Caro Cap.*,

---

[1] *See also Caro Cap. v. Koch*, 653 F. Supp. 3d 108, 121 (S.D.N.Y. 2023) ("Because all of Koch's actions were directed to Jupiter as a company, any claim against John must stand or fall on John's role as an owner of Jupiter. To maintain a claim for unjust enrichment against John directly, Defendants must demonstrate either that Jupiter's corporate veil should be pierced or that John received a benefit separate and apart from his role as an owner of Jupiter."); *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 445 (S.D.N.Y. 2010) ("Because plaintiffs do not allege that the corporate veil should be pierced with respect to [the company], there is no basis to conclude that [the plaintiffs] … conferred a personal benefit on the [company's owners]. [The plaintiffs] cannot, therefore, recover from the [owners] under an unjust enrichment theory for [the plaintiffs'] sales efforts on behalf of [the company].").

653 F. Supp. 3d at 122. Absent such circumstances, courts apply the "accepted principles that a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners." *Morris*, 82 N.Y.2d at 140. Thus, to prevail on a claim for unjust enrichment against Yuzary and Angela directly, the plaintiffs must demonstrate either that Rhino Blades's corporate veil should be pierced or that Yuzary and Angela received a benefit separate and apart from their roles as owners or employees of Rhino Blades. *See Caro Cap.,* 653 F. Supp. 3d at 121.

The district court did not discuss these principles but held that, as corporate officers, Yuzary and Angela could be personally liable for the full amount of damages if they were personally enriched at the plaintiffs' expense. *Residential Fences Corp.*, 2024 WL 964681, at *7-8. Corporate officers are not personally liable for corporate wrongdoing, however, unless the corporate veil should be pierced or the officers received a benefit independent of their roles at the corporation. We nevertheless affirm the judgment based on the record.

First, the record shows that the requirements for piercing the corporate veil have been met to impose personal liability on Yuzary. According to Yuzary's own trial testimony, Rhino Blades was "a one-man operation," App'x 179, and Yuzary "was the one operating the business," *id.* at 175. Yuzary single-handedly controlled Rhino Blades's daily operations, supplier and customer relationships, order fulfillment, advertising, solicitations, and marketing. He was solely responsible for managing the RFC/Laser account, including the charging of RFC/Laser's credit card, determining what to ship to RFC/Laser based on prior order history, and preparing the deliveries. From this evidence, the district court reasonably found that "Yuzary was operating Rhino for his personal gain" and that "everything Yuzary did with respect to Rhino was for his own benefit, including attempting to shield himself from liability via the corporate form." *Residential Fences Corp.*, 2024 WL 964681, at *7. The trial evidence demonstrates that Yuzary exercised "complete control" of Rhino Blades—including the specific

8

transactions at issue—and that he used the control "to perpetrate a wrong or injustice" against RFC/Laser by charging it four to five times more than other customers for identical products. *Cortlandt St. Recovery Corp.*, 31 N.Y.3d at 48 (quoting *Morris*, 82 N.Y.2d at 142). On this record, the district court properly held Yuzary personally liable for the losses notwithstanding Rhino Blades's corporate form.

Second, while the record does not support piercing the corporate veil to reach Angela, the evidence shows that she personally benefited from the wrongfully acquired funds. Although the record does not show that Angela had personal involvement in the overcharging scheme, it is well settled under New York law that a party need not have engaged in wrongdoing to be the recipient of unjust enrichment. *See Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978) ("Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property under such circumstances that in equity and good conscience he ought not to retain it.") (internal quotation marks omitted). "[I]n cases involving gratuitous donees or innocent parties, … New York courts have required proof that the innocent party received a specific and direct benefit from the property sought to be recovered." *Marini v. Adamo*, 12 F. Supp. 3d 549, 552 (E.D.N.Y. 2014) (internal quotation marks and alterations omitted), *aff'd*, 644 F. App'x 33 (2d Cir. 2016).

In this case, the record shows that Angela received a significant amount of money despite doing virtually nothing at the company. When asked whether Angela had "any day-to-day role of any kind with respect to the company," Yuzary testified that she had "[n]one at all." App'x 175. Notwithstanding her complete lack of involvement in the company, Yuzary testified that with the exception of a $30,000 salary for himself, he turned over all of the profits to Angela. Because RFC/Laser's overcharges represented a "significant source" of Rhino Blades's revenue, *id.* at 178, these profits included the wrongfully acquired funds. Angela was therefore properly held liable as a gratuitous donee of the wrongfully acquired funds. *See Marini v. Adamo*, 995 F. Supp. 2d 155, 204 (E.D.N.Y. 2014)

(holding that the defendants' wife "could be liable for unjust enrichment as a gratuitous donee of some of the wrongfully acquired funds … if it could be proven that she personally benefitted from the specific funds in the joint account that represented the fraudulent proceeds from her husband's coin transactions with plaintiffs"), *aff'd*, 644 F. App'x 33 (2d Cir. 2016).

*    *    *

We have considered the defendants' remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court