Matter of Lemma v Nassau County Police Officer Indem. Bd. (2018 NY Slip Op 04382)

Matter of Lemma v Nassau County Police Officer Indem. Bd.

2018 NY Slip Op 04382 [31 NY3d 523]

June 14, 2018

DiFiore, Ch. J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, September 5, 2018

[*1]

In the Matter of Nicholas Lemma, Appellant,
v
Nassau County Police Officer Indemnification Board et al., Respondents.

Argued May 2, 2018; decided June 14, 2018

Matter of Lemma v Nassau County Police Officer Indem. Bd., 147 AD3d 760, affirmed.

{**31 NY3d at 525} OPINION OF THE COURT

Chief Judge DiFiore.

General Municipal Law § 50-l provides for defense and indemnification of Nassau County police officers, requiring indemnification for civil "damages, including punitive or exemplary damages, arising out of a negligent act or other tort of such police officer committed while in the proper discharge of [the officer's] duties and within the scope of [the officer's] employment." In this CPLR article 78 proceeding, the issue is{**31 NY3d at 526} whether the Nassau County Police Officer Indemnification Board's determination revoking a prior defense and indemnification determination in favor of petitioner, a Nassau County police officer, was irrational. To answer that question, we must determine the meaning of the phrase "proper discharge of . . . duties" in the context of this statute. We conclude, as did the courts below, that the Board's finding that petitioner's conduct was not "proper" within the meaning of the statute was rational. We therefore affirm.
Based on the facts developed in the administrative record, petitioner—a Nassau County police officer since 1987—was assigned to investigate a March 26, 2005 knifepoint robbery allegedly perpetrated by three men. Two months after the robbery—on May 27, 2005—Raheem Crews was arrested for the crime. A few days later, on June 1, 2005, petitioner questioned another suspect, who admitted his own involvement but said that Crews was in jail at the time of the robbery. That same day, petitioner confirmed via a police database search that Crews was incarcerated on the date of the robbery. Despite knowledge that Crews could not have been one of the perpetrators, petitioner told no one. Apparently, due to a typographical error by other officers, the date of the robbery was incorrectly stated as April 26, 2005, on the felony complaint provided to Crews and his attorney (Crews was not in jail on that date). As a result, the alibi went undiscovered and Crews remained in pretrial detention for four months for a crime petitioner knew he [*2]did not commit. It was not until September, after Crews was arraigned on an indictment listing the date of the robbery as March 26, 2005, that defense counsel demonstrated that Crews had been incarcerated on that date, securing his immediate release and dismissal of the charges.
Crews commenced an action in federal court pursuant to 42 USC § 1983 against petitioner, among others. In 2006, Nassau County—unaware at that time that petitioner had known and failed to disclose that Crews was in jail on the date of the crime—offered to represent and indemnify petitioner pursuant to General Municipal Law § 50-l, based on the Board's initial determination that any actions taken by petitioner that might give rise to liability were within the scope of petitioner's employment and a proper discharge of his duties.
Years later, in 2009, petitioner was deposed in the Crews case, revealing for the first time that he had learned a few days after the arrest that Crews was in jail on the date of the{**31 NY3d at 527} robbery—information that he acknowledged at the deposition "exonerated" Crews. When asked what he did after learning this information, petitioner stated: "I kept it to myself and said, '[l]et the chips fall where they may.' " At that time, petitioner offered no further explanation for his conduct. In the wake of the deposition testimony, the Board reopened its decision to indemnify petitioner and held a hearing at which petitioner appeared with counsel. The focus at the hearing was the meaning of petitioner's deposition testimony, portions of which were read into the record. Petitioner's counsel acknowledged that the "let the chips fall where they may" comment was "terrible" and could "alter the minds of some" Board members to conclude petitioner's conduct was intentional. However, counsel argued that petitioner's statement reflected his state of mind at the time of the deposition—that he understood that he made a mistake and he would "let the chips fall" in accepting responsibility for his actions—and was not indicative of his state of mind when he learned Crews could not have perpetrated the robbery. Petitioner claimed that the information concerning Crews' incarceration had simply slipped his mind due to a heavy caseload and personal problems he was experiencing at the time. He denied intentionally concealing the information. Alternatively, counsel argued that, by including coverage for punitive damages, the statutory scheme provided indemnification, even for a police officer's intentional misconduct. After the reconsideration hearing, the Board voted to revoke defense and indemnification. Upon petitioner's request for reconsideration, the Board conducted a second administrative proceeding at which petitioner and his counsel were present and essentially the same facts and arguments were elicited. The Board adhered to its decision denying defense and indemnification.
Subsequently, petitioner commenced this CPLR article 78 proceeding seeking a judgment annulling the Board's determination. Petitioner argued that the phrase "proper discharge of duties" did not mean that the act itself must be proper, but only that it occurred while the officer was engaged in police work, making it synonymous with the phrase "scope of employment." Petitioner suggested this was the only reasonable interpretation considering the legislature's intent to indemnify even for acts giving rise to punitive damages. Petitioner argued the Board's decision denying indemnification was overly restrictive and, thus, arbitrary and capricious. Nassau County countered{**31 NY3d at 528} that the statute provides the Board with the responsibility to determine whether conduct in particular circumstances amounts to a proper discharge of an officer's duties and, because the Board rationally determined that petitioner's conduct was not in the proper discharge of his duties, its decision was not arbitrary and capricious.
Supreme Court denied the petition and dismissed the proceeding, reasoning that "General Municipal Law § 50-l gives the [Board] the responsibility to determine if an officer's conduct occurred 'in the proper discharge of his duties and within the scope of his employment' " and that the Board rationally concluded petitioner's conduct was not "proper." The Appellate Division affirmed, holding, among other things, that the Board rationally interpreted General Municipal Law § 50-l to limit defense and indemnification, reasoning that the word "proper" was "added . . . to exclude indemnification for intentional misconduct" (147 AD3d 760, 762 [2d Dept 2017]). We granted leave to appeal (29 NY3d 907 [2017]) and now affirm.
Where, as here, no administrative hearing was required, judicial review of an agency determination is limited to whether the Board's determination was irrational or arbitrary and capricious (see Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; Matter of Salino v Cimino, 1 NY3d 166, 172 [2003]; CPLR 7803 [3]). An administrative determination of a board or agency involving employee indemnification "may be set aside only if it lacks a factual [or legal] basis, and in that sense, is arbitrary and capricious" (Matter of Williams v City of New York, 64 NY2d 800, 802 [1985]).
In this case, the rationality of the Indemnification Board's determination turns, in part, on the meaning of language in General Municipal Law § 50-l, the governing statute. When presented with a question of statutory interpretation, a court's primary consideration "is to ascertain and give effect to the intention of the Legislature" (Riley v County of Broome, 95 NY2d 455, 463 [2000] [internal quotation marks and citation omitted]). The clearest indicator of legislative intent is the statutory text and unambiguous language should be construed pursuant to its plain meaning (see Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]). Whenever possible, statutory language should be harmonized, giving effect to each component and avoiding a construction that treats a word or phrase as superfluous (see Matter of Mestecky v City of New York, 30 NY3d 239, 243 [2017]).{**31 NY3d at 529}
General Municipal Law § 50-l, the statute at issue here, authorizes Nassau County to defend and indemnify police officers named as defendants in civil actions or proceedings, providing indemnification from "any judgment . . . for damages, including punitive or exemplary damages, arising out of a negligent act or other tort of such police officer committed while in the proper discharge of [the officer's] duties and within the scope of [the officer's] employment" (General Municipal Law § 50-l [emphasis added]). The statute declares that "[s]uch proper discharge and scope shall be determined by a majority vote of a panel . . . appointed by" various Nassau County officials—respondent Indemnification Board. The legislature, thus, left the determination of whether the statutory prerequisites are met to the discretion of the Board.
 In this case, we are essentially asked to determine the meaning of the word "proper" in the phrase: "proper discharge of [the officer's] duties." Petitioner argues that the phrases "proper discharge of . . . duties" and "scope of . . . employment" are interchangeable in this statute, requiring only that the officer be engaged in police work to be entitled to indemnification. However, such an interpretation reads the word "proper" out of the statute. The legislature's inclusion of this modifier indicates an intent to hold officers to a higher standard than mere performance of duty. Read literally, the statute permits the Board to consider the propriety of the officer's actions in determining whether defense and indemnification is appropriate, as it did here when it revisited its determination after learning petitioner concealed information that extended the pretrial detention of an innocent person.
The legislative history supports this view. Lawmakers deemed indemnification of Nassau County police officers necessary in response to an "increasing proliferation of lawsuits seeking personal damages from police officers," and the fear that such an increase would have a "chilling effect" on police "properly discharging their duties" (see Sponsors' Mem in Support, Bill Jacket, L 1983, ch 872 at 8). The sponsors of the legislation stated that the "bill does not provide blanket immunity," but was meant only to "alleviate [officers'] concern that their actions, although proper, may subject them to personal liability" (id.). In other words, lawmakers intended to condition indemnification on the propriety of police conduct—their aim was not to immunize all conduct.
The Nassau County statute is not unique in this regard. For example, the Westchester County indemnification statute{**31 NY3d at 530} precludes indemnification where the injury or damage arose from "intentional wrongdoing or recklessness" by the employee (see Westchester Code of Ordinances § 297.31 [3] [a]). Additionally, the New York City equivalent restricts indemnification to circumstances when an employee, acting in the scope of employment and discharge of duties, was not in violation of any rule or regulation of the agency at the time the alleged act or omission occurred (see General Municipal Law § 50-k).
Petitioner argues that the word "proper" cannot be construed to have such a limiting effect on indemnification because, by authorizing indemnification for punitive damages, the legislature must have meant to protect even "willful misconduct"—the type of behavior justifying a punitive damages award. We are unpersuaded. Here, where the statute requires the Board to consider the propriety of the officer's conduct, that the legislature authorized indemnification for punitive damages does not necessarily mean it meant to protect willful misconduct. However, a punitive damages finding and a defense and indemnification determination are made at different times by different factfinders. The decision whether to defend and indemnify a police officer is typically made by the Board at the beginning of litigation or upon discovery of facts previously unknown—long before the facts are litigated and a judgment of punitive damages is ever rendered. The Board may take a different view of the facts than is ultimately adopted by a jury in the underlying civil action against the officer.
Moreover, the legislative history indicates the drafters recognized that punitive damages awards might be imposed by juries in circumstances where the Board viewed the officer's actions as "proper" within the meaning of the statute. Senator Dunne, one of the bill's sponsors, explained that punitive damages were included due to the United States Supreme Court's decision in Smith v Wade (461 US 30 [1983]), which, in his view, reduced the standard of proof required for punitive damages, making such awards more common (see Letter in Support, Bill Jacket, L 1983, ch 872 at 12). Senator Dunne also referenced jurors' potential difficulty understanding and correctly applying the abstract legal principles underlying punitive damages awards (id.). This concern was underscored by the Superior Officers Association, the collective bargaining unit for all sworn members of the Nassau County Police [*3]Department from the rank of Sergeant up to and including Assistant Chief. In its letter of support, the Association asserted that{**31 NY3d at 531} "punitive damages are frequently based upon the caprice and prejudice of jurors" and "may be employed to punish unpopular defendants" such as police officers (Letter in Support, Bill Jacket, L 1983, ch 872 at 22 [emphasis omitted]). In short, the inclusion of a provision permitting indemnification against punitive damages is not incompatible with a provision limiting defense and indemnification to circumstances in which the Board found that the officer's conduct was "proper."
By choosing not to define "proper"—a somewhat subjective term—and explicitly directing that "such proper discharge" shall be determined by the Indemnification Board, the legislature indicated that precisely what "proper" means is a matter for the Board to decide based on the particular circumstances presented, subject to rationality review by the courts. We therefore decline to constrain the Board's authority by attempting to replace the word selected by the legislature with other adjectives we might deem synonymous. It appears that the intent was to give the Board substantial latitude to consider the facts and circumstances on a case by case basis, including assessment of the officer's motivation or good faith and any exigencies surrounding the act or omission. Indeed, the Board might rationally conclude conduct is "proper" within the meaning of the statute even if it is not perfect.
Finally, we note that petitioner mistakenly relies on Matter of Sagal-Cotler v Board of Educ. of the City Sch. Dist. of the City of N.Y. (20 NY3d 671 [2013]) for the proposition that "scope of employment" and "discharge of duties" always mean the same thing and that the addition of the word "proper" in this statute is of no effect. In that case, petitioners—paraprofessionals working for the New York City school system—challenged a determination denying indemnification in actions brought by students alleging they engaged in corporal punishment, conduct in violation of a rule of the Board of Regents (id. at 674). Petitioners relied on Education Law § 3028, which requires indemnification of paraprofessionals for actions taken "while in the discharge of . . . duties within the scope of . . . employment" (see Education Law § 3028). To support the denial of indemnification, the City pointed to General Municipal Law § 50-k (2), a later-enacted statute entitling city employees to indemnification only for conduct that does not violate a rule or regulation of their agency. After first determining that General Municipal Law § 50-k (2) did not preempt or otherwise dilute Education Law § 3028 (a specific statute applicable to educators), {**31 NY3d at 532}we held that the phrases "discharge of duties" and "scope of employment" were interchangeable in the context of section 3028, noting that "the statutory words 'discharge of . . . duties' [do not] restrict the right to a defense to cases where an employee acted in the proper and lawful discharge of his or her duties" (id. at 676 [emphasis added]). This analysis is not inconsistent with our conclusion here that the addition of the word "proper" in General Municipal Law § 50-l—language not found in Education Law § 3028—may, in the discretion of the Board, import such a restriction. Accordingly, the Board did not err when it interpreted the statute as permitting it to deny indemnification based on its assessment of the propriety of petitioner's conduct. The statute expressly grants the Board discretion to determine precisely what is "proper" or "improper" for indemnification purposes, in the context of a particular case.
 In sum, the Board's determination that petitioner's conduct was not in the "proper discharge of his duties" is not arbitrary and capricious based on the record of the administrative proceedings conducted by the Board. There was evidence supporting the Board's finding that, despite knowledge that Crews could not have committed the robbery for which he had been arrested and charged (and for which he remained in pretrial detention for four months), petitioner, by his own admission, remained silent—conduct antithetical to proper police work that resulted in a man's loss of liberty. Because that determination is rational, it is entitled to deference and must be sustained.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur.
Order affirmed, with costs.