# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 91
In the Matter of Corey Krug,
     Respondent,
       v.
City of Buffalo,
     Appellant.

David M. Lee, for appellant.
Ian H. Hayes, for respondent.

MEMORANDUM:

The order of the Appellate Division should be reversed, with costs, and the petition dismissed.

Petitioner police officer Corey Krug commenced this CPLR article 78 proceeding, seeking defense and indemnification, under General Municipal Law § 50-j, in connection with a civil action brought against him. Petitioner asserted that respondent City of Buffalo's denial of his request for defense and indemnification was "arbitrary and capricious under [a]rticle 78 of the CPLR."[1] The City moved to dismiss the petition, arguing that its determination was governed by Buffalo City Code § 35-28 and was not arbitrary and capricious insofar as the determination was rational and supported by the facts. In response, petitioner conceded that Buffalo City Code § 35-28—through General Municipal Law § 50-j (6)—applied to his request for a defense.

Supreme Court granted the petition in part by directing the City to provide for petitioner's defense; the court concluded that—while petitioner's request for indemnification was premature—the City's denial of a defense was "arbitrary and capricious" insofar as it lacked a sufficient factual basis. A divided Appellate Division affirmed insofar as appealed from by the City, holding that the City's denial of a defense to petitioner "was arbitrary and capricious" under Buffalo City Code § 35-28 because it lacked "sufficient factual support" (162 AD3d 1463, 1465 [4th Dept 2018]).

Buffalo City Code § 35-28 requires the City to defend an employee in civil actions "arising out of any alleged act or omission which the Corporation Counsel finds occurred

---

[1] Contrary to the dissent's conclusion otherwise, the petition was not one for mandamus to compel under CPLR 7803 (1), which requires that a petitioner "have a clear legal right to the relief demanded and [that] there . . . exist a corresponding nondiscretionary duty on the part of the administrative agency to grant that relief" and is not governed by the arbitrary and capricious standard of review (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 757 [1991]; see CPLR 7803 [1], [3]).

while the . . . employee was acting within the scope of . . . public employment and in the

discharge of [the employee's] duties," so long as the employee did not violate any rule or

regulation, or engage in intentional wrongdoing or recklessness. In this proceeding, the

parties agree that the City's determination that petitioner was not entitled to a defense is

governed by Buffalo City Code § 35-28 and have limited their arguments to whether the

City's determination is arbitrary and capricious because it lacks a factual basis (see CPLR

7803 [3]).[2]

---

[2] In an effort to justify its attempt to reach an issue not presented to this Court, the dissent inaccurately asserts that petitioner sought a defense from the City under General Municipal Law § 50-j (1) and posits that it is, therefore, unnecessary to address General Municipal Law § 50-j (6), which—the dissent concedes—bestows discretion upon local governments to adopt a local law governing defense and indemnification in certain contexts. In fact, petitioner did not argue that the City was required to defend him under General Municipal Law § 50-j (1). Rather, he sought indemnification under General Municipal Law § 50-j (1). In his motion papers before Supreme Court, petitioner confined his discussion of General Municipal Law § 50-j (1) to his request for indemnification, and he affirmatively accepted the City's position that Buffalo City Code § 35-28 "governs the City's obligation to defend an officer." Supreme Court ruled that petitioner's request for indemnification was premature and granted his petition only insofar as he requested a defense. Petitioner did not appeal, and the issue before this Court is limited to whether petitioner was entitled to a defense. The City's arguments before us—including during oral argument—assume application of Buffalo City Code § 35-28. Petitioner likewise maintains in his brief to this Court that General Municipal Law § 50-j (6) governs his request for a defense and that, through that provision, his request for a defense is governed by Buffalo City Code § 35-28. Petitioner has never argued that the Buffalo City Code is inconsistent with, superseded by, or preempted by, either subdivision of General Municipal Law § 50-j. Nor has the City had any opportunity to respond to such a claim. The propriety of petitioner's litigation strategy is not before us, and we reiterate, yet again, that we "are not freelance lawyers" (Misicki v Caradonna, 12 NY3d 511, 519 [2009]) and that it is "unfair to the litigants . . . to decide their appeals on . . . arguments their adversaries never made" (Deutsche Bank Natl. Trust Co. v Flagstar Capital Mkts., 32 NY3d 139, 155 [2018] [internal quotation marks and citations omitted]).

Given the narrow question before us and under the circumstances presented here, we cannot say that the City's determination was "irrational or arbitrary and capricious" (Matter of Lemma v Nassau County Police Officer Indem. Bd., 31 NY3d 523, 528 [2018]). Insofar as the record supports the City's conclusion that petitioner was not "acting within the scope of his public employment" under Buffalo City Code § 35-28 because his conduct constituted "intentional wrongdoing" and violated the City's rules regarding the use of force, the City's determination was not "taken without regard to the facts" (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; see generally Matter of Williams v City of New York, 64 NY2d 800, 802 [1985]).

In light of the arguments presented to this Court and to the courts below, we have no occasion to opine on the relationship between Buffalo City Code § 35-28 and General Municipal Law 50-j (see Matter of Salino v Cimino, 1 NY3d 166, 172 [2003]).

Matter of Krug v City of Buffalo.

No. 91

WILSON, J. (dissenting):

Numerous Buffalo police officers, including Officer Corey Krug, were deployed to keep order at Chippewa Street, a popular location for late-night drunken revelry. In the course of doing his job, a 30-second excerpt of a video filmed by a local TV station crew

shows Officer Krug performing his duties with what appears to be excessive force: asking an unarmed young man, Devin Ford, why he returned to the area, throwing him onto the hood of a car, striking him in the leg several times with a baton and stopping only when another officer saw the incident and told him to stop. Criminal charges were filed against Officer Krug for the use of excessive force, and Mr. Ford filed a civil suit against him. Officer Krug demanded that the City of Buffalo defend and indemnify him. The City refused; its decision was made by its Corporation Counsel, who considered just two items in deciding to deny representation and indemnification: the 30-second video excerpt and the criminal indictment of Officer Krug.

Officer Krug filed this petition under CPLR article 78 to compel the City to defend and indemnify him, alleging the City was required to do so under General Municipal Law ("GML") 50-j(1). Supreme Court granted his petition to the extent it sought to require the City to assume the defense of the litigation against Officer Krug and otherwise dismissed the petition.[1] The Appellate Division affirmed insofar as appealed from by the City.

The majority now reverses the Appellate Division, chastising it and Supreme Court for failing to apply the highly deferential standard applicable to the exercise of discretion by an administrative agency vested with discretion. In doing so, the majority makes two errors. First, it mischaracterizes Officer Krug's article 78 petition as "governed by Buffalo City Code § 35-28" (majority op at 2). But Officer Krug's article 78 petition does not once

---

[1] In response to the Court's jurisdictional inquiry, the parties stated their understanding that any new request by Officer Krug for indemnification would be brought first to the City and then, if denied, in a new article 78 proceeding.

mention any portion of the Buffalo City Code as the basis for his claim to defense and indemnification. Instead, he brought his claim entirely under General Municipal Law 50-j(1). Likewise, in the argument before Supreme Court, the parties discussed GML 50-j exclusively; there was no mention of City Code § 35-28.[2] Moreover, neither the City nor Officer Krug once mentioned GML 50-j(6) in Supreme Court; counsel for the City confirmed at oral argument before us that it had not relied on that subsection whatsoever. We must decide this case as pleaded, on the basis of GML 50-j(1).

Second, as a result of the above error, the majority treats Officer Krug's article 78 petition as if it was for mandamus to review, rather than for mandamus to compel. Mandamus to review, codified in CPLR 7803(1), asks "whether the body of officer failed to perform a duty enjoined upon it by law." The majority properly notes that mandamus to compel under CPLR 7803 (1) "requires that a petitioner 'have a clear legal right to the relief demanded and [that] there . . . exist a corresponding nondiscretionary duty on the part of the administrative agency to grant that relief'" (majority op at 2 n 1, quoting Matter

---

[2] As to the majority's belief that Officer Krug "affirmatively accepted the City's position that Buffalo Code § 35-28 'governs the City's obligation to defend an officer'" (majority op at 3 n 2), that belief derives from a tiny passage from Officer Krug's response to the City's motion to dismiss, in which he addressed *the City's argument* about the Buffalo Code. In context, that "concession" is instead an explanation that a "close reading of the Buffalo ordinances Respondent cites in its motion to dismiss reveals" a distinction between two different sections of the Buffalo Code. His brief explanation in responsive papers that the City had incorrectly interpreted, at least in part, its own code, cannot transform his claim – brought solely under GML 50-j(1) – into a claim under the Buffalo City Code. In contrast, the City repeatedly stated its understanding that Officer Krug's claim arose under GML 50-j; it relied on Buffalo Code § 35-28 to define "within the scope of employment" – not as the substantive law under which Officer Krug brought his claim.

of <u>Scherbyn v Wayne-Finder Lakes Bd. of Coop. Educ. Servs.</u>, 77 NY2d 753, 757 [1991]

[elision by majority]).  That is precisely what Officer Krug claimed in his verified petition:

"Under General Municipal Law § 50-j, the City is <u>obligated</u> to indemnify Officer Krug;"

"the City was thus <u>obligated</u> to indemnify him;" "GML § 50-j <u>requires</u> a municipality to

indemnify;" "a municipality is <u>required</u> to indemnify the officer;" "the City was <u>obligated</u>

to defend and indemnify him pursuant to GML § 50-j(1)"[3]  (emphases added).    Those

words are more than sufficient to assert a claim of a clear legal right and nondiscretionary

duty.  If no such right and duty exist, the solution is not to apply a different legal standard

applicable to discretionary agency review, but to reject the petition for mandamus to

compel on the merits.  For purposes of this case, however, this second problem does not

matter, because even under CPLR 7803(3), which governs (among other things) mandamus

to review, we should reverse because the City's determination rested on a clear error of

law.

---

[3] Obviously, then, the majority is incorrect when it asserts that Officer Krug did not seek a defense from the City under General Municipal Law 50-j(1) (majority op at 3 n 2).  Officer Krug sought exactly that in his petition.  The City, in moving to dismiss his petition, described it as "claim[ing] that the City violated General Municipal Law 50-j by denying him defense and indemnification," and argued that Officer Krug "is not entitled to a taxpayer-paid defense or public funds to satisfy any judgment or settlement." Furthermore, preserved issues include those decided by the court of instance (see <u>Telaro v Telaro</u>, 25 NY 433 [1969] ["it is well established that questions raised in the trial court or in the record, even if not argued in the intermediate appellate court, are nevertheless available in the Court of Appeals"]).  In Supreme Court, the parties orally argued the City's duty to provide a defense, and Supreme Court (and the Appellate Division) held the City had that duty.

The unfortunate consequence of the majority's recharacterization of Officer Krug's claim is that it has transformed a case that presented as a question of statewide importance we have never addressed – the obligation to defend and indemnify under GML 50-j(1) – into a question of no importance: an interpretation of what would be required under the Buffalo City Code if GML 50-j did not exist.

Under GML 50-j(1), the City of Buffalo has a duty to provide Officer Krug a defense if his conduct occurred while he was acting within the scope of his employment. The City's discretionary determination to deny representation and indemnification to Officer Krug was based on its application of an erroneous legal standard — the Buffalo City Code — rather than the common-law *respondeat superior* standard governing GML 50-j(1). In an article 78 proceeding, when a local government's decision rests on its application of an erroneous legal standard, we reverse and remit for application of the correct standard (CPLR 7803[3]).

GML 50-j is a statute of general application, applicable to all municipalities within New York State with the sole exception of New York City. It states:

> "Notwithstanding the provisions of any general, special or local law, charter or code to the contrary, every city, county, town, village, authority or agency shall be liable for, and shall assume the liability to the extent that it shall save harmless, any duly appointed police officer of such municipality, authority or agency for any negligent act or tort, provided such police officer, at the time for the negligent act or tort complained of, was acting in the performance of his duties and within the scope of his employment."

GML 50-j(1), by its terms, supersedes all other laws, and renders local governments liable for the torts of their officers acting in the performance of duties, requiring those local government to "save harmless" such officers.[4]  Quite apart from the "notwithstanding" clause, GML 50-j(1) vests no discretion in any local authority to make varying discretionary determinations about whether an officer was acting within the scope of his or her duties: that questions requires application of the common-law standard for *respondeat superior* liability.

A little legislative background is in order.  Historically, acts of police officers done within the scope of their employment — even if negligent or tortious — were deemed "governmental functions," for which local governments could not be held liable, because of their governmental immunity (see Jones v State, 33 NY2d 275, 279-280 [1963]). The legislature enacted GML 50-j to abrogate that immunity, so that local governments would be liable for the negligent acts and torts of their police officers, so long as those officers were acting within the scope of their employment (see e.g. Mem of Corp Counsel, Bill Jacket, L 1975, ch 843).  The statute contemplates everyday occurrences in which officers doing their jobs use excessive force, engage in negligent conduct, or commit some other tort, and makes the policy decision that the local government — not the officer — will be liable in those circumstances and will represent and "save harmless" the officer.

---

[4] The preposition "[n]otwithstanding" commonly is understood to mean "despite," "in spite of," or "although," and frequently foretells contractual or statutory language overriding a different, arguably inconsistent provision (see Bryan A. Garner, A Dictionary of Modern Legal Usage 600-601 [2d ed 1995]).

The legislative history makes clear that GML 50-j(1) was expected to allow for the application of the common-law *respondeat superior* standard to acts of police officers (see e.g. Mem of Morton Grusky, Bill Jacket, L 1975, ch 843). I do not believe the majority would dispute that proposition; rather, the majority deems it irrelevant because it characterizes Officer Krug's claim as arising under a local law, not the GML. Instead of whatever (un)fettered discretionary standard Buffalo's Corporation Counsel used, the Corporation Counsel was bound to apply the factors set out in Riviello v Waldron, 47 NY2d 297 (1979). Those factors are: the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and, whether the specific act was one that the employer could reasonably have anticipated" (id. at 303).

Here, the factual record is far from sufficient to show, under Riviello, that Officer Krug acted outside the scope of his employment. What is clear and undisputed is that Officer Krug was in uniform, on duty, assigned to keep order in an area known for and filled with rowdy Buffalonians. A criminal indictment cannot serve as the basis for denying an officer's defense for several reasons. First, an indictment is a set of accusations, and defendants — even police officers — are innocent until proven guilty. (Officer Krug was, in fact, acquitted following trial by jury.) Second, allowing local governments to refuse to provide a defense to officers who are indicted would limit the provisions of GML 50-j to defense in civil cases only, which does not appear in the language or legislative

history of that statute, and would not comport with the "save harmless" language in the statute.

The only other evidence on which the City relied was the 30-second video clip. But that clip is insufficient to show, under <u>Riviello</u>, that Officer Krug was acting outside of the scope of his duties. Again, the video clearly shows that Officer Krug was in uniform and on duty when the incident occurred. He was performing crowd control with the express purpose of maintaining order and breaking up fights at a particularly popular drinking area. To that end, Officer Krug was equipped with a police-issued baton. Although excessive force may always partially depart from the "normal methods of performance," the <u>Riviello</u> test contemplates this: it is a test of "actual practice" and what is "commonly done" rather than only accounting for the official policy. Here, the sad truth is some amount of excessive force is both common and could be reasonably anticipated by all municipalities, including the City of Buffalo. It would be particularly difficult to say that such use of force was not foreseen here when the City decided to deploy many additional officers the evening before Thanksgiving in an area where it expected potentially thousands of intoxicated people to congregate. Even conceding that the video shows Officer Krug using excessive force on an unarmed civilian, that is not sufficient to show that he was acting outside the scope of his duties. Of course, some uses of excessive force must be within the scope of employment, otherwise there would be no purpose behind GML 50-j.[5]

---

[5] Under <u>Riviello</u>, an officer's use of excessive force does not establish that the officer was acting outside the scope of employment. Many courts have found officers using excessive force have acted within the scope of employment. Where a plaintiff claimed that police

Furthermore, the City admitted at oral argument that it viewed only the 30-second video clip before denying Officer Krug's request for it to assume his defense, despite the fact that Officer Krug's counsel noted that a more complete version of the video was entered into evidence at Officer Krug's criminal trial, which ended in his acquittal. The City conducted no investigation before denying Officer Krug's request, employing none of the ordinary methods of investigation one would expect. The City did not interview witnesses (including other officers at the scene or Mr. Ford), take depositions or obtain affidavits, or conduct hearings of any sort (cf. Lemma v Nassau County Police Officer Indemnification Board, 31 NY3d 523, 526-527 [2018] [where the Indemnification Board took depositions, heard testimony, and conducted multiple hearings]). It may be possible, from watching a 30-second video excerpt and reading an indictment, to determine that an

---

officers "kicked and punched him in the face and back while he was on the ground," resulting in fractures, abrasions, and cuts, the court found that, "even though the officers may have departed from the normal methods of making an arrest by using excessive force," a jury could "only find that [the] defendants were acting in the scope of their employment" (Dorsey v City of Albany Police Department, 2016 WL 11605138, *1, *3 [ND NY 2016]). Even off-duty officers using excessive force may be found to have acted within the scope of their employment (see Beauchamp v City of New York, 3 AD3d 465 [2d Dept 2004] [triable issue as to whether off-duty police officers acted within the scope of employment when they assaulted two civilians and threatened them with a gun). Similarly, the Third Department held that although corrections officers may have used excessive force against inmates, it could "not be said that [the corrections officers'] conduct was outside the scope of their employment" (Cepeda v Coughlin, 128 AD2d 995, 997 [3d Dept 1987]). And, where a corrections officer "without any cause, justification or legitimate provocation, viciously punched [the] plaintiff in the face, threw him to the ground and kicked him about the body, requiring [the] plaintiff to seek medical attention," a court found that a jury could determine that, "even if involving excessive force," the incident could be within the scope of the officer's duties (Mathis v State, 140 Misc 3d 333, 334, 341 [Sup Ct, Albany County 1998]).

officer has used excessive force. It is not possible, from only that, to determine that the officer was not acting within the scope of employment. Incomplete imagery in an incomplete investigation should not determine the fate of the important legal question before us.

The majority relies on Matter of Salino v Cimino, 1 NY3d 166, 172 (2003), to justify its decision not to apply GML 50-j. But in Salino, the officer expressly grounded his claim on the Suffolk County Code, not the General Municipal Law. The officer in Salino did not raise GML 50-j "in the petition, or before Supreme Court," failing to address the GML until its briefing before this Court (id. at 173). Here, Officer Krug has expressly brought his article 78 petition under GML 50-j(1) and continues to argue that that law applies. Salino offers no basis to transform Officer Krug's GML claim into a claim under the Buffalo City Code.

Simply, the majority has applied the wrong legal standard to Officer Krug's claims, by asserting that his article 78 petition was brought to enforce rights under the Buffalo City Code rather than under the General Municipal Law. Neither use of a microscope nor a solution to reveal invisible ink discloses any mention of Buffalo City Code § 35-28 in his article 78 petition. Instead, both in that petition and before Supreme Court, Officer Krug argued that GML 50-j(1) applied and obligated the City to defend him. Therefore, contrary to the majority's conclusion that the parties supposedly agreed that Buffalo City Code § 35-28 governs, the Buffalo City Code has no application here, both because Officer Krug did not seek to enforce it, and because, even were the City to attempt to rely on it, it is expressly

preempted by GML50-j(1) – the statute under which Officer Krug sued.[6]  Accordingly, I respectfully dissent, and note that the majority's decision does not purport to contain any holding about the obligations imposed on local governments under the General Municipal Law.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order reversed, with costs, and petition dismissed, in a memorandum.  Chief Judge DiFiore and Judges Rivera, Stein, Garcia and Feinman concur.  Judge Wilson dissents in an opinion in which Judge Fahey concurs.

Decided November 26, 2019

---

[6] I note that GML 50-j(6) may allow for a local government to exercise some discretion as to the additional indemnification provided in that subsection.  However, the City never referenced that subsection at any point in these proceedings, which its counsel confirmed at oral argument.  Exactly how GML 50-j(1) and (6) interact, and whether the latter might have any bearing on a case such as this, must be left for another day.