# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 36
Columbia Memorial Hospital,
         Appellant,
         v.
Marcel E. Hinds,
         Respondent.
----------------
No. 37
Kim E. Schoch,
         Respondent,
         v.
Lake Champlain OB-GYN, P.C.,
         Appellant.
----------------
No. 38
Maple Medical, LLP,
         Appellant,
         v.
Joseph Scott, &c.,
         Respondent,
et al.,
         Defendant.
(And Five Related Appeals)

Case No. 36:

Andrew L. Zwerling, for appellant.
Seth A. Nadel, for respondent.
James D. Sullivan et al.; Wyckoff Heights Medical Center; Brooklyn Hospital Center et al.; Regional Medical Practice, P.C. et al., amici curiae.

Case No. 37:

James R. Peluso, for appellant.
Justin A. Heller, for respondent.
James D. Sullivan et al.; Wyckoff Heights Medical Center; Brooklyn Hospital Center et al.; Regional Medical Practice, P.C. et al., amici curiae.

Case Nos. 38-43:

Carl L. Finger, for appellant.
Justin A. Heller, for respondent.
James D. Sullivan et al.; Wyckoff Heights Medical Center; Brooklyn Hospital Center et al.; Regional Medical Practice, P.C. et al., amici curiae.

WILSON, J.:

Medical Liability Mutual Insurance Company (MLMIC), formerly a mutual insurance company, issued professional liability insurance policies to the eight medical professionals who are litigants in the eight cases before us on these appeals. The premiums

- 1 -

for those policies were paid by their employers.  In October 2018, MLMIC demutualized and was acquired by National Indemnity Company.  Pursuant to its "Plan of Conversion"—approved by the New York State Department of Financial Services—MLMIC sought to distribute $2.502 billion in cash consideration to "Eligible Policyholders."

The question presented is as follows: when an employer pays premiums to a mutual insurance company to obtain a policy for its employee, and the insurance company demutualizes, who is entitled to the proceeds from demutualization: the employer or the employee? We answer that, absent contrary terms in the contract of employment, insurance policy, or separate agreement, the employee, who is the policyholder, is entitled to the proceeds.

I

A

MLMIC was a mutual insurance company, which means that it was "organized, maintained and operated for the benefit of its members"—and "[e]very policyholder [was] a member of" MLMIC (Insurance Law § 1211 [a]).  National Indemnity Company (NICO), a member of the Berkshire Hathaway Group, sought to buy MLMIC in exchange for $2.502 billion in cash consideration.  On June 15, 2018, MLMIC submitted a "Plan of Conversion" (Plan) to the New York State Department of Financial Services (DFS) seeking to convert from a mutual insurance company owned by its members to a stock insurance company.

According to the Plan, the cash consideration was to be distributed to "Eligible Policyholders," defined, consistent with the Insurance Law, as "each person who had a policy 'in effect' during the three-year period preceding the MLMIC Board's adoption of the resolution" to convert, which would result in MLMIC becoming a wholly owned subsidiary of NICO.

On September 6, 2018, DFS approved both MLMIC's demutualization and NICO's acquisition subject to approval by a policyholder vote. DFS noted that, at the public hearing, different medical employers "contend[ed] that the cash consideration should be paid to them in the circumstances where they paid the premiums on behalf of policyholders and/or acted as policy administrators." In particular, "[o]ne commenter referred to the provision of Insurance Law § 7307 (e) stating that[,] in calculating such person's equitable share[,] one must factor in the amount 'such policyholder has properly and timely paid to the insurer'" on the insurance policy and "suggested that this means that the person that paid the premium is automatically entitled to the proceeds of the sale." DFS rejected that interpretation because "the same provision refers to the 'policyholder,' which might or might not be the person who paid the premium." One week later, two-thirds of the policyholders approved the plan. On October 1, 2018, MLMIC and NICO closed both the demutualization and acquisition deal.

In the Plan approved by DFS, MLMIC established an objection and escrow procedure. According to the objection procedure, a "Designee"—defined to include "Policy Administrators . . . to the extent designated by Eligible Policyholders to receive

the portion of Cash Consideration allocated to such Eligible Policyholders," with "Policy Administrator" defined as "a Person designated on the declarations page of the applicable Policy or otherwise as the administrator on behalf of the applicable Policyholder"— could object to the distribution of the cash consideration to the policyholder if it believed that it, rather than the policyholder, was entitled to receive the distribution. Upon a timely objection, the money would be placed in escrow pending the agreement of the parties or the outcome of an adversarial proceeding. On January 14, 2019, DFS issued an order related to cash consideration remaining in escrow, which provided that if MLMIC received timely notice that an employer and employee were in a dispute resolution process or litigation about the cash consideration, MLMIC would continue to hold the funds in escrow.

B

The eight cases before us on these appeals have slight differences but share the facts that are necessary for resolving the legal question before us. The facts of each case have

been detailed extensively by Supreme Court[1] and the Appellate Division,[2] so we only summarize them here.

In each case, a medical professional/employee was the sole named policyholder of a professional liability insurance policy issued by MLMIC. In each case, the medical practice/employer had included the provision of such insurance coverage as a term of employment in each employee's employment agreement; had, in most of the cases, been designated by its employee as the policy administrator[3] and had handled the administrative logistics of the policy, including receiving dividends and paying policy premiums; and, after the demutualization, had asserted that it, and not its employee, was entitled to the cash consideration that MLMIC allocated to each medical professional/employee despite the absence of an assignment of the cash consideration to the employers.

---

[1] *Columbia Mem. Hosp. v Hinds*, 65 Misc 3d 1205(A), 2019 NY Slip Op 51508(U) (Sup Ct, Columbia County 2019); *Schoch v Lake Champlain Ob-Gyn, P.C.*, 64 Misc 3d 1215(A), 2019 NY Slip Op 51176(U) (Sup Ct, Saratoga County 2019); *Maple Med., LLP v Scott*, 64 Misc 3d 909, 2019 NY Slip Op 29210 (Sup Ct, Westchester County 2019); *Maple Med., LLP v Goldenberg*; 64 Misc 3d 1213(A), 2019 NY Slip Op 51128(U) (Sup Ct, Westchester County 2019); *Maple Med., LLP v Arevalo*, 64 Misc 3d 1213(A), 2019 NY Slip Op 51127(U) (Sup Ct, Westchester County 2019); *Maple Med., LLP v Sundaram*, 64 Misc 3d 1213(A), 2019 NY Slip Op 51130(U) (Sup Ct, Westchester County 2019); *Maple Med., LLP v Mutic*, 64 Misc 3d 1213(A), 2019 NY Slip Op 51129(U) (Sup Ct, Westchester County 2019); *Maple Med., LLP v Youkeles*, 64 Misc 3d 1213(A), 2019 NY Slip Op 51131(U) (Sup Ct, Westchester County 2019).

[2] *Columbia Mem. Hosp. v Hinds*, 188 AD3d 1337 (3d Dept 2020); *Schoch v Lake Champlain Ob-Gyn, P.C.*, 184 AD3d 338, 345 (3d Dept 2020); *Maple Med., LLP v Scott*, 191 AD3d 81 (2d Dept 2020); *Maple Med., LLP v Goldenberg*, 189 AD3d 1018 (2d Dept 2020); *Maple Med., LLP v Arevalo*, 189 AD3d 1017 (2d Dept 2020); *Maple Med., LLP v Sundaram*, 189 AD3d 1019 (2d Dept 2020); *Maple Med., LLP v Mutic*, 189 AD3d 1019 (2d Dept 2020); *Maple Med., LLP v Youkeles*, 189 AD3d 1020 (2d Dept 2020).

[3] Mutic and Youkeles did not (*Scott*, 191 AD3d at 84).

Supreme Court found that Marcel Hinds, employed as an OB/GYN physician by Columbia Memorial Hospital, was entitled to the cash consideration and granted Dr. Hinds's motion to dismiss the hospital's action against him seeking to establish its entitlement to the funds (2019 NY Slip Op 51508[U] [Sup Ct 2019]). Central to the court's analysis was that Insurance Law § 7307 "repeatedly refers to those eligible for cash consideration as the 'policyholder,'" that Dr. Hinds was "clearly the policyholder" while Columbia was the policy administrator, and that Dr. Hinds had not signed any agreement assigning his portion of the cash consideration to Columbia (*id*. at *2-3).

Unlike Columbia Memorial Hospital, the other two medical practices/employers— Lake Champlain OB-GYN, P.C., and Maple Medical, LLP—prevailed before Supreme Court. Supreme Court denied Ms. Schoch's motion for summary judgment in her action seeking a declaration that she was solely entitled to the cash consideration and granted Lake Champlain's cross-motion for summary judgment (64 Misc 3d 1215(A) [Sup Ct 2019]). The court relied exclusively on a First Department case, *Matter of Schaffer, Schonholz & Drossman, LLP v Title* (171 AD3d 465 [1st Dept 2019]), which held that an employer that paid the insurance policy premiums, rather than the employee who was the named policyholder, was entitled to the cash consideration resulting from MLMIC's demutualization on a theory of unjust enrichment.[4] Similarly, Supreme Court granted

---

[4] *Schaffer* was an expedited proceeding submitted directly to the First Department as a court of first impression on stipulated facts pursuant to CPLR 3222. The parties did not brief or argue the applicable legal framework discussed in this opinion before the First Department.

summary judgment to Maple Medical in its actions against six medical professionals/employees, holding that it was entitled to the MLMIC consideration, on the ground that *Schaffer* was "dispositive of the issues raised in this matter" and that the court was bound to follow it under the doctrine of stare decisis (64 Misc 3d 909, 911 [Sup Ct 2019]).

Before the Appellate Division, however, all the medical professionals/employees prevailed. In *Columbia Memorial Hospital v Hinds*, the Appellate Division affirmed Supreme Court's order granting Dr. Hinds's motion to dismiss (188 AD3d 1337 [3d Dept 2020]). Citing Insurance Law § 7307, the Court held that "entitlement to the MLMIC funds is not contingent on who paid the premiums for the subject policy. Rather, the sole policyholder, here, [Dr. Hinds], is entitled to receive said funds unless he or she executed an assignment of such rights to third party" (*id.* at 1338).

In *Schoch v Lake Champlain Ob-Gyn, P.C.*, the Appellate Division reversed, granted Ms. Schoch's motion for summary judgment, and declared that she was entitled to the cash consideration, reasoning that because Ms. Schoch "was the named insured on the relevant MLMIC policy . . . per [Insurance Law § 7307 (e) (3)] and the conversion plan's definitions, [Schoch] was entitled to the cash consideration" (184 AD3d 338, 342 [3d Dept 2020]). The Court also rejected Lake Champlain's unjust enrichment argument, holding that although "the demutualization proceeds were unexpected and will be a windfall to whichever party receives them," the "fact that one party will receive these benefits does not mean that such party has unjustly enriched itself at the other's expense" because "[n]o

factual mistake exists," "both parties benefitted from [Lake Champlain's] fulfillment of its contractual obligations to provide malpractice insurance and pay for the premiums," "[n]either party changed its position based on demutualization," and Ms. Schoch's "conduct was neither tortious nor fraudulent" (*id*. at 346).

In the *Maple Medical* actions, the Appellate Division held that the physicians/employees were entitled to the MLMIC consideration based on "[t]he plain language of Insurance Law § 7307, the plan of conversion, and the DFS decision" (*Maple Med., LLP v Scott,* 191 AD3d 81, 92 [2d Dept 2020]; *see also Goldenberg*, 189 AD3d 1018; *Arevalo*, 189 AD3d 1017; *Sundaram*, 189 AD3d 1019; *Mutic*, 189 AD3d 1019; *Youkeles*, 189 AD3d 1020). The Court also rejected Maple Medical's unjust enrichment claims, reasoning that "[t]he payment of the medical malpractice insurance premiums was not a gratuitous act; it was part of the bargained-for consideration for the employment services that the physicians provided to the medical group" (*Scott*, 191 AD3d at 103-104).

We granted leave in *Columbia Memorial Hospital v Hinds* (36 NY3d 904 [2021]) and *Schoch v Lake-Champlain Ob-Gyn, P.C.* (35 NY3d 918 [2020]). In the *Maple Medical* actions, the Appellate Division granted Maple Medical leave to appeal to our Court and certified a question as to whether the order was properly made (*Scott,* 2021 NY Slip Op 62415[U] [2d Dept 2021]; *Goldenberg*, 2021 NY Slip Op 62413[U] [2d Dept 2021]; *Arevalo*, 2021 NY Slip Op 62412[U] [2d Dept 2021]; *Sundaram*, 2021 NY Slip Op 62416[U] [2d Dept 2021]; *Mutic*, 2021 NY Slip Op 62414[U] [2d Dept 2021]; *Youkeles*, 2021 NY Slip Op 62417[U] [2d Dept 2021]).

II

We begin and end our analysis of the medical practices/employers' claim to legal entitlement to receive the demutualization proceeds with the text of New York's Insurance Law. "When presented with a question of statutory interpretation, a court's primary consideration is to ascertain and give effect to the intention of the Legislature" (*Nadkos, Inc. v. Preferred Contrs. Ins. Co. Risk Retention Group LLC*, 34 NY3d 1, 7 [2019] [internal quotation marks omitted], quoting *Matter of Lemma v Nassau County Police Officer Indem. Bd.*, 31 NY3d 523, 528 [2018]). "We have long held that 'the statutory text is the clearest indicator of legislative intent' and that a court "should construe unambiguous language to give effect to its plain meaning'" (*id.* [alteration omitted], quoting *Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]). It is also our well-settled practice that "statutory language should be harmonized, giving effect to each component and avoiding a construction that treats a word or phrase as superfluous" (*Lemma*, 31 NY3d at 528).

MLMIC's conversion from a mutual insurance company to a stock insurance company is governed by Insurance Law § 7307 (e) (3). Section 7307 (e) (3) provides that when an insurance company demutualizes, it must create a conversion "plan" and contains several requirements for that plan, including:

> "The plan shall include . . . [t]he manner and basis of *exchanging the equitable share of each eligible mutual policyholder for securities or other consideration*, or both, of the stock corporation into which the mutual insurer is to be converted and the disposition of any unclaimed shares. The

plan shall also provide that *each person who had a policy of insurance in effect at any time during the three year period* immediately preceding the date of adoption of the resolution described in subsection (b) hereof *shall be entitled to receive in exchange for such equitable share*, without additional payment, *consideration* payable in voting common shares of the insurer or other consideration, or both" (Insurance Law § 7307 [e] [3] [emphasis added]).

Thus, by statute, when an insurance company demutualizes, it must exchange the equitable share of "each eligible mutual policyholder" for, as relevant here, consideration. That makes sense given the nature of the corporate structure of a mutual insurance company— it is owned by its policyholders and operated for their benefit:

"Every domestic mutual insurance corporation shall be organized, maintained and operated for the benefit of its members as a non-stock corporation. *Every policyholder shall be a member of such corporation* and shall, except as provided in subsection (d) hereof, be entitled to vote at any regular or special meeting of such corporation, to notice thereof pursuant to the by-laws and to share equitably in dividends declared by the board of directors" (Insurance Law § 1211 [a] [emphasis added]).[5]

Insurance Law § 7307 delineates other rights exclusively held by policyholders pursuant to a demutualization. Section (f) provides that the mutual insurer must give prompt notice to policyholders about the demutualization plan:

"Prompt notice shall be given by the mutual insurer to all persons who become policyholders or holders of section 1307 agreements on or after the date of the adoption of the resolution described in subsection (b) hereof, of the pendency of a

---

[5] *See also* Edward X. Clinton, *The Rights of Policyholders in an Insurance Demutualization*, 41 Drake L Rev 657, 662 (1992) ("Cases and statutes have clearly established that the mutual policyholders are the owners of the company").

proposed conversion and of the effect thereof on them"
(Insurance Law § 7307 [f]).

Section (j) provides that the demutualization plan will be adopted only if two-thirds of

voting policyholders approve it:

"Each such policyholder eligible to vote pursuant to subsection
(i) hereof shall be entitled to such number of votes as may be
provided for in the by-laws of the mutual insurer" (*id*. § 7307
[j]).

Thus, the Insurance Law mandates that policyholders be informed about and vote on the

fairness of demutualization consideration, requirements that are in harmony with the

Insurance Law's mandate that the same policyholder is entitled to receive the

consideration.

Insurance Law § 7307 is dispositive of the legal question in these appeals: it

provides that the "policyholder" is entitled to cash consideration when a mutual insurance

company demutualizes (Insurance Law § 7307 [e] [3]). Here, it is undisputed that each

medical professional/employee was the sole named policyholder of a professional liability

insurance policy issued by MLMIC. Further, no contract of employment, insurance policy

language, or separate agreement in any of the eight cases purported to assign the

employee/policyholder's rights in the demutualization consideration to anyone. Thus, the

medical professionals/employees—Dr. Hinds, Ms. Schoch, Dr. Scott, Dr. Goldenberg, Dr.

Arevalo, Dr. Sundaram, Dr. Mutic, and Dr. Youkeles—are legally entitled to the cash

consideration.

The medical practices/employers argue that because they paid the policy premiums, they are entitled to the cash consideration, asserting that they are the "de facto" owners of the policies because they chose the policies, paid the premiums, and handled the necessary administrative tasks. That argument is not persuasive. The premiums paid for the cost of insurance coverage, not for an ownership interest in MLMIC. A policyholder's ownership interest in a mutual insurance company is "an incident of the structure of mutual insurance policies" (*Dorrance v United States*, 809 F3d 479, 485 [9th Cir 2015]; Insurance Law § 1211 [a]), not something purchased through the payment of premiums.

Further, that the employers purchased, negotiated, or selected policies does not make them policyholders or members. A policyholder's designation of her or his employer as a policy administrator does not convert the employer into a policyholder or member; it merely authorizes the employer to undertake various tasks on behalf of the employee policyholder. Indeed, that some of the employees/policyholders explicitly delegated to their employers the right to receive dividends on their behalf pursuant to the MLMIC policies cuts against the employers' claim to the demutualization consideration given that, in all eight cases, the employees/policyholders refused to assign such rights to demutualization consideration to their employers, despite several of the employers repeatedly seeking such assignment.

The medical practices/employers also argue that because the employees themselves paid no premiums, their allocable shares, pursuant to Insurance Law § 7307 (e) (3), must be nothing—an absurd result they urge us to avoid. That argument is based on the portion

of Insurance Law § 7307 (e) (3) that specifies the method by which the total

demutualization proceeds are to be allocated:

> "The equitable share of the policyholder in the mutual insurer *shall be determined by the ratio which the net premiums* (gross premiums less return premiums and dividend paid) *such policyholder has properly and timely paid to the insurer* on insurance policies in effect during the three years immediately preceding the adoption of the resolution by the board of directors under subsection (b) hereof bears to the total net premiums received by the mutual insurer from such eligible policyholders" (Insurance Law § 7307 [e] [3]).

Based on this statutory language, the employers argue that because the "net premiums"

their employees themselves "properly and timely paid to the insurer" is zero, the

employees' allocable share must also then be zero.  The employers contend this language

reflects a legislative intent to award the consideration to whomever actually paid the

premiums.

We reject that argument.  As the Appellate Division correctly noted, the provision

of section 7307 (e) (3) on which the medical practices/employers rely merely addresses the

method by which the amount of consideration is to be allocated among the members who

own the mutual insurance company—the policyholders—not to whom it is payable, which

the same subsection, in the immediately preceding sentence, clearly describes as "each

person who had a policy of insurance in effect" (*see Schoch*, 184 AD3d 342; *Scott*, 191

AD3d at 96-97).   Moreover, the employers paid the premiums on behalf of the employees

and, thus, such payments are ultimately attributable to the employee for purposes of

Insurance Law § 7307.  Thus, in each case, the Appellate Division properly rejected the

employers' claims that they were legally entitled to the cash consideration under Insurance Law § 7307.


## III


The medical practices/employers argue that, regardless of their legal entitlement, they should nevertheless receive the cash consideration as a matter of equity because the medical professionals/employees would be unjustly enriched if they were entitled to the cash consideration. Their argument is meritless.

Unjust enrichment "lies as a quasi-contract claim" and contemplates "an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties" (*Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516 [2012] [internal quotation marks and citation omitted]; *see IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 142 [2009]; *Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561, 572 [2005]). Unjust enrichment claims are rooted in "the equitable principle that a person shall not be allowed to enrich [themselves] unjustly at the expense of another" (*Miller v Schloss*, 218 NY 400, 407 [1916]), and "[t]he essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 [2011], quoting *Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421 [1972]). To recover under a theory of unjust enrichment, a litigant must show "that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and

good conscience to permit [the other party] to retain what is sought to be recovered'" (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 [2011], quoting *Citibank, N.A. v Walker*, 12 AD3d 480, 481 [2d Dept 2004]).  An unjust enrichment claim "is undoubtedly equitable and depends upon broad considerations of equity and justice" and, to determine if it is against equity to permit a party to retain what is sought to be recovered, courts "look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent" (*Paramount Film Distrib. Corp.*, 30 NY2d at 421).

Here, the employers fail on every factor.  Under the first factor, the employees are not unjustly "enriched" by receiving the cash consideration.  Rather, the employees should receive the cash consideration because they have lost something valuable as a direct result of the demutualization: their ownership interests as members of MLMIC.  The employers' argument rests on the unstated premise that an ownership interest in a mutual insurance company is worthless.  But that premise is wrong.  The Insurance Law's mandate that policyholders be compensated for their loss of membership interests demonstrates that the Legislature considered an ownership interest to have value, even if such value had not yet been monetized prior to the demutualization (*cf. Fisher v United States*, 82 Fed Cl 780, 797-798 [Fed Ct Cl 2008], *affd* 333 Fed Appx 572 [Fed Cir 2009]).

Under the second factor, the employees will not receive the cash consideration "at [their employers'] expense."  Although the employers paid the policy premiums for each

of their employees, those premiums, as discussed earlier, paid for the cost of professional

liability insurance coverage; the ownership interest the employees had in MLMIC was

incident to the corporate structure of mutual insurance companies, wholly unrelated to the

payment of premiums. Moreover, "[e]nrichment alone will not suffice to invoke the

remedial powers of a court of equity. Critical is that under the circumstances and as

between the two parties to the transaction the enrichment be unjust" (*McGrath v Hilding*,

41 NY2d 625, 629 [1977] [emphasis added]). Here, the employers did not pay the

insurance premiums gratuitously; they paid the premiums on the employees' behalf

because they were contractually obligated to do so by the employment agreements that they

negotiated, and the employers received the full benefit of those agreements since they

received the services of the employees and the residual benefits of their staff being insured.

Finally, under the third factor, for the reasons described above, there is nothing

inequitable about complying with the clear statutory language establishing that

policyholders are the members of mutual insurance companies, which are to operate for

their benefit, and should receive consideration distributed in the event of demutualization.

"Typical [unjust enrichment] cases are those in which the [enriched party], though guilty

of no wrongdoing, has received money to which [the enriched party] is not entitled"

(*Corsello v Verizon New York, Inc.*, 18 NY3d 777, 790 [2012] [emphasis added]; *see E.J.*

*Brooks Co.*, 31 NY3d at 455). The "doctrine is a narrow one; it is 'not a catchall cause of

action to be used when others fail'" (*E.J. Brooks Co.*, 31 NY3d at 455, quoting *Corsello*,

18 NY3d at 790). Here, the employees were entitled to the cash consideration under the

insurance law; the medical practices/employers could have written agreements assigning the demutualization benefits to themselves had they so chosen and their failure to do so does not render the outcome inequitable.

IV

In sum, we hold that when an employer pays premiums to a mutual insurance company to obtain a policy of which its employee is the policyholder, and the insurance company demutualizes, absent contrary terms in the contract of employment, insurance policy, or separate agreement, the policyholder is entitled to the proceeds from the demutualization. Accordingly, in each case, the order of the Appellate Division should be affirmed with costs, and, in the *Maple Medical* actions, the certified question not answered as unnecessary.

For Nos. 36 and 37 (in each case):
Order affirmed, with costs. Opinion by Judge Wilson. Chief Judge DiFiore and Judges Rivera, Garcia, Singas, Cannataro and Troutman concur.

For Nos. 38-43 (in each case):
Order affirmed, with costs, and certified question not answered as unnecessary. Opinion by Judge Wilson. Chief Judge DiFiore and Judges Rivera, Garcia, Singas, Cannataro and Troutman concur.

Decided May 19, 2022